IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRMA CARRERA AGUALLO, DROR HERTZ, KELVIN HOLMES, MELISSA ANTONIO, MARY MACARONIS, and GREGGORY VEECH, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| | ) | Case No. 1:21-cv-01883 |
| Plaintiffs, | ) ) | Honorable Martha M. Pacold |
| v. | ) ) | |
| KEMPER CORPORATION and INFINITY INSURANCE COMPANY, | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      INTRODUCTION ........................................................................................................ 1

II.     CASE SUMMARY ....................................................................................................... 2

        A.      The Data Incident ............................................................................................ 2

        B.      Procedural Posture .......................................................................................... 3

        C.      History of Negotiations ................................................................................... 4

III.    SUMMARY OF THE SETTLEMENT ........................................................................ 5

        A.      The Settlement Class........................................................................................ 5

        B.      The Settlement Benefits .................................................................................. 6

                1.      Monetary Relief ................................................................................... 6

                        a.      Automatic Benefits .................................................................. 6

                        b.      Claimed Benefits...................................................................... 7

                                i.       Out-of-Pocket Losses.................................................... 7

                                ii.      Lost-Time Losses .......................................................... 8

                                iii.     California Subclass Claimed Benefits ........................... 8

                                iv.      Relevant Caps and Reductions...................................... 8

                2.      Equitable Relief .................................................................................. 9

        C.      Notice and Claims Process............................................................................... 9

                1.      Notice ................................................................................................... 9

                2.      Claims, Objections, and Requests for Exclusion ................................ 10

        D.      Attorneys' Fees, Costs, and Service Awards ............................................... 11

IV.     ARGUMENT ............................................................................................................... 12

        A.      The Settlement Class and California Subclass Should be Certified for
                Settlement Purposes. ...................................................................................... 12

                1.      The Settlement Class Members and California Settlement Subclass
                        Members are so numerous that joinder is impracticable ...................... 14

                2.      Questions of law and fact are common to the members of the
                        Settlement Classes ............................................................................... 14

                3.      Plaintiffs' claims are typical of the claims of the members of the
                        classes they represent .......................................................................... 15

                4.      The Adequacy Requirement is Satisfied.............................................. 15

5.    Rule 23(b)(3) is Satisfied ........................................................ 16

      a.    Common Questions of Fact and Law Predominate .................... 16

      b.    A Class Action is the Superior Method for Resolving These Claims .................................................................................... 17

B.    The Settlement Should be Approved as Fair, Reasonable and Adequate. ........... 18

    1.    The Class Representatives and Class Counsel have Adequately Represented the Class ............................................................... 20

    2.    The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.............................. 21

    3.    The Settlement Provides Substantial Relief for the Class ..................... 23

      a.    The costs, risks, and delay of trial and appeal favor approval of the Settlement ..................................................... 25

      b.    The method of providing relief is effective ................................. 25

      c.    The proposed award of attorneys' fees is fair and reasonable ................................................................................ 26

      d.    There are no additional agreements required to be identified under Rule 23(e)(3)................................................. 27

    4.    The Settlement Agreement Treats Class Members Equitably to Each Other ............................................................................... 28

C.    The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements .............................................................................. 28

V.    CONCLUSION ............................................................................................ 30

**TABLE OF AUTHORITIES**

<u>CASES</u>                                                                                          <u>PAGE(S)</u>

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ............................. 12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 620 (1997) ......................................................................... 13, 17, 18

*Aranda v. Caribbean Cruise Line, Inc.*,
  No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ...................................... 22

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305, 312-13 (7th Cir. 1980) ....................................................... 18, 20, 21

*Atkinson v. Minted, Inc.*,
  No. 3:20-cv-03869-VC, 2021 WL 2411041 (N.D. Cal. May 14, 2021) ................................. 24

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  896 F.3d 792, 795 (7th Cir. 2018) ....................................................................... 27

*Catholic Healthcare W. v. U.S. Foodservice Inc.*,
  729 F.3d 108, 118 (2d Cir.2013) ......................................................................... 17

*CV Reit, Inc. v. Levy*,
  144 F.R.D. 690, 698 (S.D. Fla. 1992) ..................................................................... 16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78, 85 (2d Cir. 2001) ........................................................................... 22

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) ............................................................................. 18

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) .............................. 21

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215, 228 (N.D. Ill. 2016) ..................................................................... 23

*Grady v. de Ville Motor Hotel, Inc.*,
  415 F.2d 449, 451 (10th Cir. 1969) ..................................................................... 23

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................................... 25

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, 1027 (9th Cir. 1998) ..................................................................... 23

*Hapka v. CareCentrix, Inc.*,
  No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................. 17

*Herrera v. Wells Fargo Bank, N.A.*,
  No. SACV 18-332JVS, 2021 WL 3932257 (C.D. Cal. Jun. 8, 2021) ................................... 13

*Hinman v. M and M Rental Center,*
   545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008).................................................................. 15

*In re Anthem, Inc. Data Breach Litig.,*
   327 F.R.D. 299, 312-15 (N.D. Cal. 2018) ....................................................................... 17

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
   270 F.R.D. 330, 345 (N.D. Ill. 2010)......................................................................... 19, 23

*In re Capital One TCPA Litig.,*
   80 F. Supp. 3d 781, 793 (N.D. Ill. 2015)................................................................... 21, 27

*In re Equifax, Inc. Customer Data Sec. Breach Litig.,*
   No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019)....................................................... 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
   293 F.R.D. 21 (D. Me. 2013)......................................................................................... 25

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................................................... 13, 17

*In re Northfield Labs., Inc. Sec. Litig.,*
   No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ....................................... 19, 20

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.,*
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016).......................................... 20

*In re Target,* 309 F.R.D. 482 (D. Minn. 2015) ................................................................... 13

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,*
   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ...................... 17

*In re TikTok, Inc. Consumer Privacy Litigation,*
   MDL No. 3948, 2021 WL 4478403 (N.D. Ill. Sept. 30, 2021) (slip op.)....................... 12

*In re TikTok, Inc., Consumer Privacy Litigation,*
   2021 WL 4478403 ......................................................................................................... 16

*Isby v. Bayh,*
   75 F.3d 1191, 1196 (7th Cir. 1996) ............................................................................... 18

*Johnson v. Brennan,*
   No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) .......................................... 22

*Karpilovsky v. All Web Leads, Inc.,*
   No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. June 25, 2018) ................................... 21, 27

*Keele v. Wexler,*
   149 F.3d 589, 594 (7th Cir. 1998) ................................................................................. 15

*Kolinek v. Walgreen Co.,*
   311 F.R.D. at 501 (N.D. Ill. 2015)................................................................................. 27

*Kusinski v. Macneil Auto. Prod. Ltd.,*
   No. 17-CV-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018) ...................................... 27

*Martin v. JTH Tax, Inc.*
No. 13-cv-6923, ECF No. 85 (N.D. Ill. Sept. 16, 2015)......................................27

*Milliron v. T-Mobile USA, Inc.*,
No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)...................................22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950).................................................................................28

*Oshana v. Coca-Cola Co.*,
472 F.3d 506, 513 (7th Cir. 2006) ...................................................................15

*Parker v. Risk Mgmt. Alternatives, Inc.*,
206 F.R.D. 211, 213 (N.D. Ill. 2002)...............................................................15

*Retired Chi. Police Ass'n v. City of Chi.*,
7 F.3d 584, 598 (7th Cir. 1993) .......................................................................16

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277, 279 (7th Cir. 2002) ...................................................................12

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401, 405 (2d Cir. 2015) ....................................................................16

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
No. 08-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010)...............................22

*Savanna Group, Inc. v. Trynex, Inc.*,
2013 WL 66181 (N.D. Ill. 2013)......................................................................14

*Spates v. Roadrunner Transportation Sys., Inc.*,
2016 WL 7426134 (N.D. Ill. 2016) ..................................................................15

*Steele v. GE Money Bank*,
No. 1:08-CIV-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011), report and
recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498
(N.D. Ill. June 1, 2011) .............................................................................22, 23

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646, 653 (7th Cir. 2006) ...................................................................23

*Taubenfeld v. Aon Corp.*,
415 F.3d 597, 600 (7th Cir. 2005) ...................................................................27

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 2551 (2011)...........................................................................14

*Wright v. Nationstar Mortg. LLC*,
No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016).............22, 23, 25

## STATUTES

Cal. Civ. Code § 1798.150(a) .............................................................................8

California Consumer Privacy Act ("CCPA") ..............................................4, 8, 24, 28

California Consumers Legal Remedies Act.................................................................... 4

Unfair Competition Law of CA ................................................................................... 4

## OTHER AUTHORITIES

2 *McLaughlin on Class Actions*, § 6:7 (8th ed. 2011) ................................................ 22

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002).................................................. 19

Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 17-18.23 (Aug. 2018) ................................ 29

MANUAL FOR COMPLEX LITIGATION, § 21.633-34.................................................... 20

*Newberg on Class Actions*, § 11:50 ........................................................................ 23

## RULES

Fed. R. Civ. P. 12(b)(6)........................................................................................... 25

Fed. R. Civ. P. 23 ............................................................................................ passim

Fed. R. Civ. P. 23(a) ................................................................................ 13, 14, 15, 16

Fed. R. Civ. P. 23(a)(1)........................................................................................... 14

Fed. R. Civ. P. 23(a)(2)........................................................................................... 14

Fed. R. Civ. P. 23(a)(4)........................................................................................... 16

Fed. R. Civ. P. 23(b)(3)..................................................................................... passim

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 28, 29, 30

Fed. R. Civ. P. 23(c)(2)(C)(iii) ................................................................................ 26

Fed. R. Civ. P. 23(c)(3) ........................................................................................... 30

Fed. R. Civ. P. 23(e) ......................................................................................... 12, 19

Fed. R. Civ. P. 23(e)(1)........................................................................................... 28

Fed. R. Civ. P. 23(e)(1)(B)................................................................................. 19, 20

Fed. R. Civ. P. 23(e)(1)(B)(ii).................................................................................. 12

Fed. R. Civ. P. 23(e)(2)................................................................................. 19, 20, 25

Fed. R. Civ. P. 23(e)(2)(C)(ii).................................................................................. 25

Fed. R. Civ. P. 23(e)(3)................................................................................. 19, 27

Fed. R. Civ. P. 56................................................................................................... 25

Plaintiffs Irma Carrera Aguallo, Dror Hertz, Kelvin Holmes, Mary Macaronis, and Greggory Veech (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement dated October 14, 2021 (the "Settlement Agreement" or "SA").[1]

## I.      INTRODUCTION

The present case arises out of two separate data security incidents that allegedly compromised the personal and private identifying information of over six million of Defendants' employees and customers. Plaintiffs, individually and on behalf of the Settlement Class (as defined below), filed suit against Defendants Kemper Corporation and Infinity Insurance Company (collectively, "Defendants" and, together with Plaintiffs, the "Parties"), alleging Defendants failed to adequately protect their personal and private information. Throughout the pendency of the litigation, Defendants have denied allegations of wrongdoing and liability, and asserted defenses to the individual and representative claims.

Recognizing the risks of protracted litigation, the Parties engaged in settlement negotiations and two separate mediations: the first was with Rodney A. Max of Upchurch Watson White & Max, and the second with Bennett Picker of Stradley Ronan Stevens & Young, both of whom are widely respected and experienced in mediating class action and data breach cases. Through mediation and extensive negotiations, the Parties reached an agreement that provides for significant monetary and equitable relief for the Settlement Class. Specifically, all 6,151,872 Settlement Class Members will be provided automatic access to 18 months of credit monitoring and financial account protection without the need to file a claim. Additionally, every class member has the opportunity to make a claim for up to $10,000 in reimbursement for out-of-pocket losses,

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definitions as set forth in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Klinger Decl."), filed herewith.

including for up to six hours in lost time. Additional benefits in the amount of up to $50 are available for California Settlement Subclass members. Plaintiffs conservatively value the Settlement obtained for the Class at $17.6 million.[2] This is an outstanding result.

Pursuant to the Parties' agreement, Plaintiffs now respectfully request that this Court: (1) preliminarily approve the Parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (2) appoint Plaintiffs Irma Carrera Aguallo, Dror Hertz, Kelvin Holmes, Melissa Antonio, Mary Macaronis, and Greggory Veech as Class Representatives; (3) appoint Plaintiffs' counsel Gary M. Klinger of Mason Lietz & Klinger LLP, Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, and Jean S. Martin of Morgan & Morgan Complex Litigation Group as Class Counsel, (4) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation, and to object to or exclude themselves from the settlement.

## II. CASE SUMMARY

### A. The Data Incident

Kemper Corporation is one of the nation's leading specialized insurers, offering insurance for home, life, auto, business, property, and umbrella insurance. Klinger Decl. ¶ 16. Prior to its acquisition by Kemper in 2018, Defendant Infinity was a provider of auto insurance focused on serving the specialty, nonstandard segment. *Id.* Infinity Insurance Company is wholly owned by Kemper Corporation. *Id.* In the ordinary course of doing business with or working for Defendants,

---

[2] This valuation is based upon (i) the $4 million made available to class members for out-of-pocket losses; (ii) the $500,000 made available to class members for extraordinary losses; (ii) the value of the credit monitoring and financial account protection provided automatically to all class members which can be conservatively valued at $12.1 million (*see infra* at Section III.B.1); and (iii) the $1 million in remedial measures Defendants have agreed to implement to protect against similar data security incidents in the future.

employees, customers, and prospective customers are required to provide Defendants with personal, private information ("PII") such as names, addresses, Social Security numbers ("SSN"), driver's license numbers, medical leave information, and/or workers' compensation claim information. *Id.*

Plaintiffs allege that on December 14, 2020 and March 25, 2021, respectively, Defendants were the targets of two separate security incidents in which an unauthorized user accessed Defendants' network and computer systems and which resulted in unauthorized access of PII (the "Project K Data Incident" and "Scraping Incident," respectively, or collectively, the "Data Incidents"). *Id.*, ¶ 17. Plaintiffs allege that, as a result of the Data Incidents, an unauthorized user gained access to Plaintiffs', Defendants' customers', current and former employees', and agents' PII, including, but not limited to, names, addresses, Social Security Numbers ("SSN"), driver's license numbers, medical leave information, and/or workers' compensation claim information. *Id.*, ¶ 18.

After Defendants learned of the Data Incidents, they notified the potentially affected individuals that their PII may have been compromised, and offered 12-months of credit monitoring services. *Id.*, ¶ 19. Of the individuals notified, approximately 5,827,542 were impacted by the Project K Incident and 324,330 were impacted by the Scraping Incident, for a total of 6,151,872 notified individuals. *Id.*

B. **Procedural Posture**

After receiving notice that their PII had been impacted by the Project K Data Incident, Plaintiffs Antonio, Carrera Aguallo, Hertz, and Holmes retained their respective counsel. *Id.* ¶ 21. On April 8, 2021, after investigation by their counsel, Plaintiffs Carrera Aguallo, Hertz, and Holmes brought suit against Defendants related to claims arising from the Project K Data Incident. *Id.*, ¶ 23. Plaintiff Antonio filed a separate, related action on April 9, 2021. *Id.*, ¶ 24. Counsel for Plaintiffs thereafter learned that Plaintiff Macaronis also intended to file suit. *Id.*, ¶ 25. Instead of continuing to litigate on separate but parallel tracks, counsel for Plaintiffs conferred with counsel for Defendants and the parties agreed that these plaintiffs would file a Consolidated Amended

Class Action Complaint ("CAC"). *Id.*, ¶ 26. Plaintiff Antonio dismissed her initially filed lawsuit, and, on April 19, 2021, Plaintiffs Carrera Agualo, Hertz, Holmes, Antonio and Macaronis filed their CAC, followed shortly by a Second Amended Class Action Complaint ("SAC"). *Id.*, ¶¶ 27-29; ECF Nos. 2, 21. On September 3, 2021, Plaintiffs filed their Third Amended (and operative) Class Action Complaint ("TAC"), adding Plaintiff Veech as an additional named Plaintiff in connection with the Scraping Incident. Klinger Decl. ¶ 30; ECF No. 30.

The operative complaint is brought on behalf of Plaintiffs and "[a]ll natural persons residing in the United States whose PII was compromised in the Data Breach announced by Defendants on or about March 16, 2021 and on or about May 25, 2021." Klinger Decl., ¶ 31. It also names a California Subclass, defined as: "[a]ll natural persons residing in California whose PII was compromised in the Data Breach announced by Defendants on or about March 16, 2021 and on or about May 25, 2021." Klinger Decl., ¶ 32. Plaintiffs allege causes of action for: (1) negligence; (2) negligence *per se*; (3) unlawful practices in violation of California's Unfair Competition Law; (4) unfair practices in violation of California's Unfair Competition Law; (5) violation of the California Consumer Privacy Act; (6) violation of the California Consumers Legal Remedies Act; (7) Breach of Implied Contract; (8) Declaratory Judgment; and (9) Unjust Enrichment. *Id.*, ¶ 33. Plaintiffs seek an order requiring credit monitoring services for Class Members, compensatory damages, statutory damages, equitable relief, and such other relief as the Court deems just and proper. *Id.*, ¶ 34.

### C.   History of Negotiations

Recognizing the risks of protracted litigation, the Parties engaged in settlement negotiations. *Id.* ¶ 35. To facilitate their negotiations, they agreed to use experienced mediator Rodney A. Max of Upchurch Watson White & Max. *Id.* ¶ 36. Mr. Max has extensive experience in class action mediation generally, and data breach mediation in particular. *Id.* On July 12, 2021, the Parties attended a full day mediation via zoom with Mr. Max. While the Parties made significant progress toward resolving the case, a few issues remained. *Id.* ¶ 37.

Accordingly, the Parties agreed to participate in a second mediation. *Id.* ¶ 38. On July 30, 2021, the Parties participated in a second full-day mediation, this time with Bennett Picker of Stradley Ronan Stevens & Young. *Id.* ¶ 39. Mr. Picker is a heavily credentialed mediator, with extensive experience in class actions, including data breach cases. *Id.* Following the second mediation, the Parties were able to reach an agreement on all central settlement terms and execute a term sheet. *Id.* ¶ 40. Over the next eight to ten weeks, the Parties continued negotiating the finer points of the Settlement Agreement, diligently drafting and finalizing the Settlement, Notice and Claim Forms, and drafting the motion for preliminary approval for presentment to the Court. *Id.* ¶ 42.

## III.    SUMMARY OF THE SETTLEMENT

### A.    The Settlement Class

The settlement negotiated on behalf of the Class provides for two separate forms of relief: (1) monetary relief; and (2) equitable relief in the form of information security enhancements. *Id.* ¶ 44; Settlement Agr. Section 2. The Settlement provides for a nationwide Settlement Class as well as a California Subclass.

**The Settlement Class**:

all natural persons residing in the United States who were sent notice letters notifying them that their PII was compromised in the Data Incidents announced by Defendants on or about March 16, 2021 and on or about May 25, 2021.

**The California Settlement Subclass**:

all natural persons residing in the State of California who were sent notice letters notifying them that their PII was compromised in the Data Incidents announced by Defendants on or about March 16, 2021 and on or about May 25, 2021.

*Id.* ¶¶ 45-46; Settlement Agr. Sec. 1.27 and Sec. 1.2. The Nationwide Class and California Subclass specifically exclude: (i) Defendants and their respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of

competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incidents or who pleads *nolo contendere* to any such charge. *Id.* The Settlement Class and California Subclass include individuals affected by both the Project K Incident and the Scraping Incident. *Id.* ¶ 47; Settlement Agr. Sec. 1.27. Approximately 5,827,542 individuals were notified of the Project K Incident and 324,330 individuals were notified of the Scraping Incident, for a total of 6,151,872 notified individuals. *Id.*; Settlement Agr. Sec. I.

**B.** **The Settlement Benefits**

The Settlement provides for both monetary and equitable relief.

**1.** **Monetary Relief**

There are three types of monetary relief provided for by the Settlement Agreement.

*a.* *Automatic Benefits*

First, upon final approval of the Settlement Agreement, all 6,151,872 Settlement Class Members will be provided *automatic* access to Aura's Financial Shield Services ("Aura Financial Shield" or "Shield Services") for a period of 18 months from the Effective Date of the settlement *without the need to submit a Settlement Claim*. Klinger Decl*.* ¶ 49. This benefit will be provided with the Short Notice as a link with a redeemable code to be used directly with Aura Financial Shield. *Id*. Financial fraud coverage provided through Aura Financial Shield is much more useful than credit monitoring; it focuses on protecting financial assets, freezing identity at 10 different Bureaus including the three main credit bureaus, home and property title monitoring, income tax protection and other services. *Id.* This service is integrated with Early Warning Services to provide real-time monitoring of financial accounts. *Id.* Financial Shield also carries a $1,000,000 policy protecting the subscriber. *Id.* This service will be available to all 6,151,872 Settlement Class Members for a period of 18-months with the ability of Settlement Class Members to enroll at any point during the 18-month period for the duration of the 18-month period. *Id.*

Financial Shield Services from Aura, like those provided for by the Settlement Agreement, retail for $135 per year.[3]  Klinger Decl. ¶ 50. Thus, the value of these services for 18 months is at least $202 per person. *Id.* Because all Settlement Class Members will automatically receive this benefit, the value of this benefit obtained for the Class could be valued at $1.2 billion ($202 x 6.1 million class members) given that is approximately what it would cost for each class member to individually purchase this product on the open market. However, even if only 1% of the Class (or approximately 60,000 class members) utilizes the Shield Services, the value of that benefit equates to a conservative value of $12.1 million.

*b.    Claimed Benefits*

Second, in addition to the Automatic Benefits, Settlement Class Members may submit a claim for documented "Out-of-Pocket Losses" and "Lost-Time Losses." *Id.* ¶ 51. Additionally, California Settlement Subclass Members can make a claim for an additional cash payment for statutory damages. *Id.*, ¶ 55.

i.    <u>Out-of-Pocket Losses</u>

Out-of-Pocket Losses are capped at $10,000 per individual and will include, without limitation:  unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after December 14, 2020, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.*, ¶ 52. Notably, while there is an individual cap of $10,000 per person on Out-of-Pocket Losses, there is no cap in the aggregate, meaning if every Settlement Class Member submitted a valid claim for $10,000 in Out-of-Pocket Losses, the Settlement Agreement would require every Settlement Class Member be paid. *Id.*, ¶ 53.

---

[3] See https://www.aura.com/pricing (last accessed October 13, 2021).  The service costs $10 per month with a nominal service fee each month.

ii.     Lost-Time Losses

Settlement Class Members can also claim up to six hours in lost time spent dealing with the effects of the Data Incidents, referred to as "Lost-Time Losses." *Id.*, ¶ 54. Three hours of lost time can be claimed at $18 per hour with a simple attestation and brief description of the activities performed during that time. *Id.* An additional three hours of Lost-Time Losses can be claimed with documented evidence of the lost time. *Id.* Documented lost time will be paid at $18 per hour; however, if Settlement Class Members missed work in order to address the Data Incidents, Settlement Class Members can be reimbursed at the rate of documented compensation up to $50 per hour. *Id.*

iii.     California Subclass Claimed Benefits

Plaintiffs allege violations of California's Consumer Privacy Act, which grants California consumers a private right of action against the unauthorized access and exfiltration, theft, or disclosure of certain types of personal information, including the right to seek statutory damages. Cal. Civ. Code § 1798.150(a). In addition to the Out-of-Pocket Loss and Lost-Time Losses reimbursements available to the nationwide Settlement Class, California Settlement Subclass Members will also be eligible for an additional statutory benefit of $50 each (the "California Claims"). *Id.*, ¶ 55. California Subclass Members can claim this benefit by attesting that they were a resident of California at the time of the Data Incidents. *Id.* The $50 payment may be subject to a *pro rata* reduction.

iv.     Relevant Caps and Reductions

The total of all California Claims and claims for Lost-Time Losses is capped at $4,000,000. *Id.*, ¶ 56. If the total of all California Claims and Lost-Time Losses claims exceeds $4,000,000, then each claim for Lost-Time Losses and each California Claim will be reduced *pro rata* until the total is no higher than $4,000,000. *Id.*, ¶ 56.

Out-of-Pocket Losses are capped at $10,000 per person—but are not subject to any aggregate cap, meaning if every Settlement Class Member submitted a valid claim for $10,000 in

Out-of-Pocket Losses, the Settlement Agreement would require every Settlement Class Member be paid. *Id.*, ¶ 53.

### 2. Equitable Relief

In addition to the monetary benefits described, the Settlement Agreement also provides for equitable relief in the form of changes to Defendants' business practices. *Id.*, ¶ 57. Based on confirmatory discovery provided by Defendants, Defendants have taken or will be taking the steps listed in Exhibit E to the Settlement Agreement. *Id.*

### C. <u>Notice and Claims Process</u>

### 1. Notice

Subject to Court approval, the Parties have agreed to use RG/2 Claims Administration LLC as the Claims Administrator. *Id.*, ¶ 58. Notice will be paid for by Defendants, separate and apart from any funds available to Settlement Class Members. *Id.*, ¶ 63. Within thirty (30) days after the entry of the Preliminary Approval Order ("Notice Commencement Date") and to be substantially completed not later than forty-five (45) days after entry of the Preliminary Approval Order, and subject to the requirements of the Settlement Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class via email to the email addresses in Defendants' possession. *Id.*, ¶ 59. Where the Short Notice is undeliverable via email or where an email address is not available, the Short Notice will be sent via mail to the address in Defendants' possession. Prior to mailing, addresses will be run through the National Change of Address database. *Id.* Short Notices returned with forwarding addresses will be forwarded, and those returned with no forwarding addresses will be resent to any valid address found after performing a skip trace. *Id.*

The Claims Administrator will also be responsible for creating a Settlement Website, and shall maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement, the TAC, and any other materials agreed upon or requested by the Court. *Id.*, ¶ 60. Settlement Class Members will be able to submit claim forms through the Settlement Website. *Id.*

The Claims Administrator will also create and maintain a toll-free help line with a live operator to provide Settlement Class Members with additional information about the settlement. The Claims Administrator also will provide copies of the Long Notice and paper Claim Form, as well as the Settlement Agreement, upon request. *Id.*, ¶ 61.

Additionally, Defendants will post a link to the Settlement Website on their own websites, Kemper.com and https://www.infinityauto.com. *Id.*, ¶ 62.

### 2. Claims, Objections, and Requests for Exclusion

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. *Id.*, ¶ 64.

Class Members will have 90 days from the Notice Commencement Date to submit their claim form to the Claims Administrator, either by mail or online. *Id.*, ¶ 65. The Claims Administrator has authority to assess the validity of claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Settlement Class Member 30-days to cure the defect before rejecting the claim. *Id.*, ¶ 66. Settlement Class Members will also have 30-days from receipt of the offer to accept or reject payment. *Id.* Upon rejection, the Claims Administrator may, in its judgment, reconsider its initial determination and make an additional offer. *Id.* Claims will be paid within 60 days of the Effective Date, or within 30 days of the date that the claim is approved, whichever is later. *Id.*

Any Settlement Class Member who wishes to opt out of the settlement will have until 60 days after the Notice Commencement Date to provide written notice that they would like to be excluded from the Settlement Class. *Id.*, ¶ 67. Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. *Id.*, ¶ 68. The written notice must clearly manifest a Person's intent to opt out of the Settlement Class. *Id.*

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement must do so in writing, and send their objection the Settlement Administrator 60

days from the Notice Commencement Date. *Id.*, ¶ 69. The written objection must include: (i) the objector's full name and address; (ii) the case name and docket number; (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of one of the Data Incidents, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Proposed Settlement Class Counsel and counsel for Defendants. The objector or his or her counsel may also file Objections with the Court through the Court's ECF system, with service on Proposed Settlement Class Counsel and Defendants' Counsel made through the ECF system. *Id.*, ¶ 70.

      **D.**    **<u>Attorneys' Fees, Costs, and Service Awards</u>**

      The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Representative Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that Defendants would pay reasonable attorneys' fees, costs, expenses, and a service award to Representative Plaintiffs as may be agreed to by Defendants and Proposed Settlement Class Counsel and as ordered by the Court, or, in the event of no agreement, as ordered by the Court. *Id.*, ¶ 71. Defendants have agreed to pay attorneys' fees and litigation costs in the amount of up to $2,500,000 as approved by the Court. *Id.*, ¶ 72. The Settlement Agreement also provides for a reasonable service award to each Plaintiff in the amount of $1,500. *Id.*, ¶ 73. The service award is meant to compensate Plaintiffs for their efforts which include maintaining contact with counsel, assisting in the investigation of the case, reviewing

pleadings, remaining available for consultation throughout the mediations, answering counsel's many questions, and reviewing the Settlement Agreement. *Id.*, ¶ 74. Plaintiffs will seek the Court's approval of the requested attorneys' fees, costs and service awards prior to the Final Fairness Hearing by way of a separate motion. *Id.*, ¶ 75.

## IV.     <u>ARGUMENT</u>

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the district court must:  (1) determine whether it will likely be able to certify the putative class for purposes of judgment on the proposed settlement; (2) determine whether the proposed settlement is within the range of possible approval with regard to the criteria set forth in Rule 23(e); and (3) approve the proposed notice plan and direct the plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re TikTok, Inc. Consumer Privacy Litigation*, MDL No. 3948, 2021 WL 4478403, *5 (N.D. Ill. Sept. 30, 2021) (slip op.) (internal citations omitted).

Here, the proposed Settlement Class and California Settlement Subclass meet the standards for certification; the proposed settlement is an outstanding result for Settlement Class Members and well within the range of possible approval; and the notice program proposed by the Parties meets all requirements of due process and Rule 23. Thus, this Court should grant preliminary approval.

### A.     <u>The Settlement Class and California Subclass Should be Certified for Settlement Purposes</u>.

At the preliminary approval stage, the Court must determine that it "will likely be able" to certify the putative class or classes for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011).

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened; as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also, e.g., In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). Both the Settlement Class and the California Settlement Subclass should be similarly certified. *See Herrera v. Wells Fargo Bank, N.A.*, No. SACV 18-332JVS, 2021 WL 3932257, at *12 (C.D. Cal. Jun. 8, 2021) (granting preliminary approval of settlement and finding equitable treatment of class members

even where statutory subclass members would receive greater relief than non-statutory subclass members).

Here, the Settlement Class and California Settlement Subclass meet the requirements of Rule 23 and warrant certification.

### 1. The Settlement Class Members and California Settlement Subclass Members are so numerous that joinder is impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181, *4 (N.D. Ill. 2013). Here, there are approximately 6,151,872 class members. Joinder, therefore, is clearly impracticable, and the class thus easily satisfies Rule 23's numerosity requirement.

### 2. Questions of law and fact are common to the members of the Settlement Classes.

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

Here, commonality is satisfied because the circumstances of each particular class member retain a common core of factual or legal issues with the rest of the class, regardless of whether the individual is a member of the Settlement Class or both the Settlement Class and the California Settlement Subclass. Plaintiffs' claims center on whether Defendants failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. For example, issues common to all class and subclass members include:

- Whether Defendants owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiffs' and Settlement Class Members' PII;

- Whether Defendants knew or should have known that they did not employ reasonable measures to keep the PII of Plaintiffs and Settlement Class Members secure; and

- Whether Defendants violated the law by failing to promptly notify Plaintiffs and members of the Classes that their PII had been compromised.

These common questions, and others alleged by Plaintiffs in their operative complaint, are central to the causes of action brought here and can be addressed on a class-wide basis because they all tie back to the same common nucleus of operative facts—the Data Incidents and Defendants' data protection measures. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement") Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. Plaintiffs' claims are typical of the claims of the members of the classes they represent.

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transportation Sys., Inc.*, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the claims of Plaintiffs and all Class Members arise out of the same course of conduct—that Defendants collected and failed to adequately protect the Settlement Class Members' PII—and assert the same theories of liability. As a result, the typicality requirement is satisfied.

### 4. The Adequacy Requirement is Satisfied.

The test for evaluating adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc., Consumer Privacy* Litigation, 2021 WL 4478403, at *7 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993). Here, the Class Representatives and Class Counsel meet the test of adequacy.

First, there is no conflict between Plaintiffs and the Settlement Class Members. Plaintiffs were allegedly harmed in the same way as all class members when Defendants failed to adequately secure their PII. Plaintiffs and all Settlement Class and California Subclass Members seek relief for injuries arising out of the same Data Incidents. In light of this common event and injury, the named Plaintiffs have every incentive to vigorously pursue the class claims and no conflict exists.

Further, Class Counsel are qualified to represent the class. They have extensive experience in data privacy and consumer class actions. *See* Klinger Decl., ¶¶ 3-11; *see also* Doc. 11-1 (Decl. of Jean S. Martin); Doc. 11-2 (Decl. of Gary M. Klinger); Doc. 11-3 (Decl. of Rachele R. Byrd). The results obtained by this settlement confirm counsel's adequacy. Thus, the requirements of Rule 23(a) are satisfied.

### 5. Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) allows for certification only where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a. Common Questions of Fact and Law Predominate.

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405 (2d Cir. 2015) (quoting

*Catholic Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir.2013)) (internal quotation marks omitted). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class, and whether Defendants breached that duty. The common questions that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

     *b.  A Class Action is the Superior Method for Resolving These Claims.*

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of millions of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incidents.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the classes should be certified for settlement purposes.

**B.** **The Settlement Should be Approved as Fair, Reasonable and Adequate**.

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally

favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) citing *In re AT&T*, 270 F.R.D. at 346. "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination: the new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has issued to the class, is a final fairness hearing. Fed. R. Civ. P. (e)(2); *see also* MANUAL FOR COMPLEX LITIGATION, § 21.633-34; *In re Northfield Labs.*, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of the relevant factors supports preliminarily approving the Settlement and issuing notice.

### 1. The Class Representatives and Class Counsel have Adequately Represented the Class.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. *See* Klinger Decl., ¶ 13. At the outset of their investigation, Class Counsel conducted extensive research regarding the Plaintiffs' claims, Defendants, and the Data Incidents. *Id.*, ¶¶ 15-16. The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Rodney A. Max, and later to engage in a second mediation with the assistance of experienced mediator Bennett Picker. *Id.*, ¶¶ 36-39. Prior to the first mediation, the Parties fully briefed the relevant issues, and Defendants produced nearly 1,000 pages of documents. *Id.*, ¶ 36. Even after reaching an agreement on the central terms at the second mediation, the Parties spent months fully negotiating the finer points

of the Settlement Agreement. *Id.*, ¶ 42. As such, and considering counsel's extensive experience in data breach litigation (*see, e.g.,* Klinger Decl., ¶¶ 3-14), the Parties were able to enter into settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to privacy class settlement where the parties exchanged discovery over a six-month period and then mediated the case to reach a settlement).

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other class members. They thus have every incentive to vigorously pursue the claims of the class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the settlement agreement. Klinger Dec., ¶ 74. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Plaintiffs' counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the class. Klinger Decl., ¶¶ 13-14. Plaintiffs' counsel also believe that the benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

      **2.    The settlement was negotiated at arm's-length by vigorous advocates, and there has been no fraud or collusion.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions*, § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank,* No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), report and recommendation adopted, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class, preventing potential collusion"); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[4]

Here, the Agreement resulted from good faith, arms'-length settlement negotiations over many months, including an in-person mediation session with respected mediator Rodney A. Max of Upchurch Watson White & Max, and a second mediation with a likewise respected mediator Bennett Picker of Stradley Ronan Stevens & Young. Klinger Decl., ¶¶ 36-39. Plaintiffs and Defendants put together detailed mediation submissions setting forth their respective views as to the strengths of their case, and Defendants produced nearly a thousand pages of documents. *Id.*, ¶ 36. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. *Id.* ¶ 39. By the end of the second full-day mediation, the Parties reached an agreement on the central terms and executed a term sheet, but still spent months finalizing all settlement terms and documents. *Id.,* ¶¶ 40-42.

Accordingly, it is clear that the Parties negotiated their settlement at arm's length and absent any fraud or collusion. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *1 (N.D. Ill. Mar. 2, 2017) (granting preliminary approval to privacy

---

[4] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

settlement resolved with the assistance of a mediator); *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright,* 2016 WL 4505169, at * 11 (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery). Thus this factor weighs in favor of preliminary approval.

### 3. The Settlement Provides Substantial Relief for the Class.

The Settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T*, 270 F.R.D. at 347. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A*., 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the Settlement provides for both automatic and claims-made monetary relief, as well as equitable relief in the form of specific data security enhancements designed to better protect

Settlement Class Members' PII. All Settlement Class Members will be automatically provided with a code to enroll in 18-months of comprehensive Aura Financial Shield services, valued at $202 per person. Klinger Decl., ¶ 50. Moreover, all members of the Settlement Class will be able to submit a claim for ordinary expense reimbursements and lost time totaling up to $10,000 per person. *Id.*, ¶ 52. Notably, while there is an individual cap of $10,000 per person on Out-of-Pocket Losses, there is no aggregate cap, meaning if every Settlement Class Member submitted a valid claim for $10,000 in Out-of-Pocket Losses, the Settlement Agreement would require that every Settlement Class Member be paid. *Id.*, ¶ 53.

Members of the California Settlement Subclass can make an additional monetary claim, simply by attesting that they were residing in the State of California during the time of the Data Incidents. *Id.,* ¶ 55. The California Consumer Privacy Act ("CCPA"), which took effect on January 1, 2020, allows consumers to seek statutory damages of up to $750 per violation. Given the infancy of this statute, however, very few courts have had the opportunity to opine on the appropriate monetary value of these claims. In *Atkinson v. Minted, Inc.*, No. 3:20-cv-03869-VC, 2021 WL 2411041 (N.D. Cal. May 14, 2021), the court granted preliminary approval of a settlement where plaintiffs alleged that in violation of the landmark CCPA, Minted failed to protect consumers' PII from exfiltration. In plaintiffs' motion for preliminary approval of the settlement, plaintiffs contended that the settlement would provide 4.1 million class members with, among other relief, an estimated cash payment of $43 per person, which the court found to be fair, reasonable, and adequate. *See Atkinson,* No. 3:20-cv-03869-VC, Pl.'s Memo. in Supp. of Mot. Prelim. Approval, ECF No. 42 at 4. Here, members of the California Settlement Subclass, who allege similar harms to the plaintiffs in *Atkinson*, can make a claim for $50, which Plaintiffs believe is fair, reasonable and adequate under the circumstances. A *pro rata* reduction of the California Claims will only occur *if* the total of Lost-Time Losses and California Claims exceeds $4,000,000. *Id*., ¶ 56.

As such, and as further detailed below, the proposal should be preliminarily approved with an order directing that notice be provided to the Class.

   a. *The costs, risks, and delay of trial and appeal favor approval of the Settlement.*

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and class members can have a chance at relief.

Plaintiffs dispute the defenses Defendants are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

   b. *The method of providing relief is effective.*

 "[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should

deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: automatic provision of Shield Monitoring services *and* cash payments *and* equitable relief. Shield Monitoring Services will be automatically provided, by code, on the Short Notice provided to Settlement Class Members. Cash Awards will be distributed based upon the method provided by claimants on their respective claim forms. *See* Klinger Decl. Ex. 1-A. Class Members will have the opportunity to receive some compensation with a simple attestation, and greater compensation by providing documentary evidence. *Id.* Class members will have 90 days from the commencement of the notice process to make a claim for a portion of the settlement by submitting their claim form either online or via U.S. Mail. *Id.*, ¶ 65. The Claims Administrator will have the authority to assess the validity of the claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Class Member 30 days to cure the defect before rejecting the claim. *Id.*, ¶ 66. Claims will be paid within 60 days of the Effective Date, or within 30 days of the date that the claim is approved, whichever is later. *Id.* Accordingly, all Settlement Class Members will receive their award with a reasonable amount of time. For these reasons, the means by which the relief will be distributed is fair, efficient, and effective.

<em>c. The proposed award of attorneys' fees is fair and reasonable.</em>

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed Settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of attorneys' fees and costs in the amount of $2,500,000—a small fraction of the value of the total settlement.[5] The requested fee is 14.2% of the $17.6 million dollar valuation of this settlement set out at page 4, footnote 3, above. In fact, the fees and costs requested are approximately 20 percent of the value

---

[5] Plaintiffs will file a complete petition for fees, costs, and service awards by separate filing prior to the deadline for Settlement Class Members to object to or exclude themselves from the Settlement.

of the extremely conservative value of the *automatic* benefit alone (i.e. the $12.1 million dollar figure representing a 1% take rate of the Aura Financial Shield – see page 8-9 *supra*), not including the up to $10,000 available to *each* Settlement Class Member in Out-of-Pocket reimbursements and Lost-Time Losses. This percentage fee requested falls well below other approved class settlements, including privacy class settlements. *See, e.g., Kolinek v. Walgreen Co.*, 311 F.R.D. at 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.* No. 13-cv-6923, ECF No. 85 (N.D. Ill. Sept. 16, 2015) (awarding fees of 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund") *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (same); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 17-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees of 35% of the settlement fund). Plaintiffs' counsel achieved an excellent result for the Class after undertaking substantial risk in bringing this action on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiffs' counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Class Notice. At this stage of the settlement, the requested fees and costs are clearly within the range of possible approval, and support preliminary approval of the Settlement Agreement.

> d. *There are no additional agreements required to be identified under Rule 23(e)(3).*

As no additional agreements requiring identification exist, this factor does not weigh either in favor of or against preliminary approval.

4.      **The Settlement Agreement Treats Class Members Equitably to Each Other**.

Here, the proposed Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members and California Settlement Subclass Members will *automatically* receive a code by which they can utilize up to 18-months of Shield Services. Similarly, all are eligible to make a claim for up to $10,000 in reimbursements for Out-of-Pocket Losses and Lost-Time Losses. *Id.*, ¶¶ 52-54. While members of the California Settlement Subclass can recover $50 (included within the $10,000 individual limit), such a recovery is warranted, as California Settlement Subclass Members have additional and valuable California state claims, such as the CCPA. *Id.*, ¶ 55.

Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the settlement. And, while Plaintiffs will each be seeking a $1,500 award for their services on behalf of the classes, this award is significantly less than the amount that any given Settlement Class Member can claim in reimbursements and thus does not create an improper motivation to settle or give rise to undue inequities across the classes.

Accordingly, this factor also weighs in favor of preliminary approval.

C.      **The Parties' Notice Plan Satisfies the Requirements of Rule 23 and Due Process Requirements**.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of communication have evolved, and permitting notice by electronic means, including e-mails, digital

media, and social media, may provide the best practicable notice under the circumstances.  Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 17-18.23 (Aug. 2018).  Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to amended Rule 23 advises:  "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities."  Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 19 (Aug. 2018). Consistent with that directive, counsel for the parties and the Claims Administrator have carefully considered cost, customer preference, and effectiveness in determining the best practicable means of communicating the settlement benefits and rights of exclusion (among other matters) to the Settlement Class.

Here, notice will be provided directly to individual Settlement Class Members via the contact information they provided to Defendants when interacting with them. Klinger Decl., ¶¶ 58-63. Specifically, the Claims Administrator will first send Notice to the Settlement Class via email to the email addresses in Defendants' possession. *Id.*, ¶ 59. Where the Short Notice is undeliverable via email or where an email address is not available, the Short Notice will be sent via U.S. Mail to the address in Defendants' possession. *Id.* Prior to mailing, addresses will be run through the National Change of Address database and updated. *Id.* Short Notices returned with forwarding addresses will be forwarded, and those returned with no forwarding address will be resent to any valid address found after performing a skip trace. *Id.* The Claims Administrator will also create and maintain a Settlement Website where Settlement Class Members can view relevant documents, submit their claims, or get answers to frequently asked questions. *Id.*, ¶ 60. In addition to the direct Notice and Settlement Website, the Claims Administrator will also maintain a dedicated toll-free, live operator help line, to provide Settlement Class Members with additional information they may need. *Id.*, ¶ 61. In addition to the actions taken by the Claims Administrator,

Defendants will also post a link to the Settlement Website on their respective websites, Kemper.com and https://www.infinityauto.com. *Id.*, ¶ 62.

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included in both the Long Notice and Short Notice in language that is easy to understand. *See* Klinger Decl. Exs. 1-B, 1-C.

Because the class notice and notice plan set forth in the Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances, the Court should direct the Parties and the Claims Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

## V.    <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court (1) conditionally approve the Parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiffs as the Class Representatives, (3) appoint Plaintiffs' counsel as Class Counsel, (4) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Settlement Class Members to submit claims for compensation, objections and requests for exclusion, and (7) set a date for a Final Approval Hearing.  A proposed Preliminary Approval Order is attached to the Settlement Agreement, at Declaration of Gary M. Klinger, Ex. 1-D.

Respectfully Submitted,

DATED:  October 14, 2021  By:  _/s/ Gary M. Klinger_
Gary M. Klinger
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
gklinger@masonllp.com

Rachele R. Byrd
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com

Jean S. Martin
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: 813-559-4908
Facsimile: 813-222-4795
jeanmartin@forthepeople.com

M. Anderson Berry
CLAYEO C. ARNOLD, A
PROFESSIONAL LAW CORP.
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2021, I filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois via the Court's CM/ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system.

By: */s/ Gary M. Klinger*
Gary M. Klinger