**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IRMA CARRERA AGUALLO, DROR HERTZ, KELVIN HOLMES, MELISSA ANTONIO, MARY MACARONIS, and GREGGORY VEECH, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | Case No. 1:21-cv-01883 <br><br> Honorable Martha M. Pacold |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **DECLARATION OF GARY M. KLINGER IN SUPPORT OF PLAINTIFFS' UNOPPOSED** |
| KEMPER CORPORATION and INFINITY INSURANCE COMPANY, | ) ) ) | **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendants. | ) ) ) | |

I, **Gary M. Klinger**, being competent to testify, make the following declaration based on my personal knowledge. I declare:

1.      I am currently a partner of the law firm Mason Lietz & Klinger LLP ("MLK"), which was founded on March 16, 2020. I am one of the lead attorneys for Plaintiffs, was appointed one of the three Interim Co-Lead Counsel in this matter, and seek appointment as Class Counsel for the proposed Settlement Class. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      A true and correct copy of the Settlement Agreement ("Agreement") is attached hereto as **Exhibit 1**. Included with the Agreement are the following sub-exhibits:

> **Exhibit A:     Claim Form**

> **Exhibit B:     Long Notice**

Exhibit C:    **Short Notice**

Exhibit D:    **Preliminary Approval Order**

Exhibit E:    **Increased Data Security Protocols**
                    **(filed provisionally under seal)**

### Counsel Qualifications

3.      Proposed Class Counsel have extensive experience prosecuting complex class actions. My experience, and that of my partners, is described in MLK's Firm Resume, attached hereto as **Exhibit 2**.

4.      As members of MLK and other prior law firms, the firm's attorneys have represented both plaintiffs and defendants in more than 100 class action lawsuits in state and federal courts throughout the United States.

5.      With respect to privacy cases, MLK is currently litigating more than sixty cases across the country involving violations of the TCPA, BIPA, privacy violations, data breaches, and ransomware attacks.

6.      While the firm's partners have decades of class action experience, it is noteworthy that just in the time since Mason Lietz & Klinger's inception on March 14, 2020, I, and/or my partners (either individually, or as a member of MLK) have been appointed class counsel in a number of data breach or data privacy cases, including:

a.    *Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y. Jan. 27, 2021) (class counsel in a data breach class action settlement; final approval granted);

b.    *In re GE/CBPS Data Breach Litig.*, No. 1:20-cv-02903 (S.D.N.Y. June 11, 2020), ECF No. 35 (appointed co-lead counsel in nationwide class action);

c.    *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (appointed class counsel; final approval granted);

     d.     *Chatelain v. C, L & W PLLC d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (Tex. 42nd Dist. Ct. Taylor Cnty. Feb. 24, 2021) (appointed class counsel; settlement valued at over $7 million; final approval granted);

     e.     *Jackson-Battle v. Navicent Health, Inc.*, No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. Aug. 4, 2021) (Mr. Lietz appointed class counsel in data breach case involving 360,000 patients; final approval granted);

     f.     *Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*, No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. Sept. 21, 2020) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted);

     g.     *Nelson v. Idaho Cent. Credit Union*, No. CV03-20-00831 (Idaho 6th Jud. Dist. Ct. Bannock Cnty. June 1, 2021) (Mr. Klinger appointed co-lead counsel in data breach class action involving 17,000 class members; granted final approval of settlement valued at $3.3 million);

     h.     *In re Canon U.S.A. Data Breach Litig.*, No. 1:20-cv-06239-AMD-SJB (E.D.N.Y. Mar. 9, 2021), ECF No. 19 (Mr. Klinger appointed co-lead counsel);

     i.     *Richardson v. Overlake Hosp. Med. Ctr.*, No. 20-2-07460-8 SEA (Wash. Super. Ct. King Cnty. Sept. 10, 2021) (Mr. Lietz, Mr. Klinger, and Ms. Perry appointed class counsel in data breach case; final approval granted);

     j.     *Kenney v. Centerstone of Am., Inc.*, No. 3:20-cv-01007-EJR (M.D. Tenn. Aug. 9, 2021) (Mr. Klinger appointed co-lead class counsel; final approval granted August 9, 2021);

     k.     *Klemm v. Maryland Health Enters., Inc. d/b/a Lorien Health Servs.*, No. C-03-CV-20-002899 (Md. Cir. Ct. Balt. Cnty. Aug. 12, 2021) (appointed Settlement Class Counsel, preliminary approval granted); and

     l.     *Martinez v. NCH Healthcare Sys., Inc.*, No. 2020-CA-000996 (Fla. 20th Jud. Cir. Ct. Collier Cnty. Oct. 5, 2021) (final approval granted).

     7.     I have personally resolved dozens of class action cases involving consumer and privacy statutes in state and federal courts across the country. Some representative cases include the following: *Smith v. State Farm Mut. Auto. Ins. Co*., No. 1:13-cv-2018 (N.D. Ill. Dec. 8, 2016); *Jochan v. State Farm Mut. Auto. Ins. Co*., No. 1:15-cv-04326 (N.D. Ill. July 27, 2015) (Leinenweber, J.); *Burk v. State Farm Fire & Cas. Co.*, No. 2:14-cv-02642 (D. Ariz. July 21,

2017); *Aguilar v. State Farm Mut. Auto. Ins. Co*., No. 1:16-cv-01211 (C.D. Ill. Nov. 20, 2017); *Kim v. State Farm Mut. Auto. Ins. Co*., No. 2015-CH-08655 (Ill. Cir. Ct. Cook Cnty.); *Sweis v. State Farm Mut. Auto. Ins. Co*., No. 2015-CH-18757 (Ill. Cir. Ct. Cook Cnty.); *Ghose Inc. v. 7 Eleven, Inc*., No. 2012-CH-04114 (Ill. Cir. Ct. Cook Cnty.); *Schumacher v. State Auto. Ins. Co*., No. 1:13-cv-00232 (S.D. Ohio Mar. 13, 2015); *Block v. Lifeway Foods, Inc.*, No. 1:17-cv-01717 (N.D. Ill. Oct. 16, 2017); *Chavez v. Church & Dwight Co., Inc.*, No. 1:17-cv-01948 (N.D. Ill. Jan. 31, 2019); *Craftwood Lumber Co. v. CMT (USA), Inc*., No. 1:14-cv-06864 (N.D. Ill. Nov. 5, 2014); *LaBrier v. State Farm Fire & Cas. Co.*, No. 2:15-cv-04093 (W.D. Mo. Nov. 7, 2017); *Dennington v. State Farm Fire & Cas. Co*., No. 4:14-cv-04001 (W.D. Ark. June 2, 2020); *Selby v. State Farm Mut. Auto. Ins. Co*., No. 2010-CH-43684 (Ill. Cir. Ct. Cook Cnty.); *O'Sullivan v. iSpring Water Sys., LLC*, No. 1:17-cv-2237 (N.D. Ga. Sept. 6, 2017); *In re Auto Body Shop Antitrust Litig*., No. 6:14-md-02557 (M.D. Fla. Dec. 23, 2020); *Pine v. A Place for Mom, Inc*., No. 2:17-cv-01826 (W.D. Wash. Jan. 11, 2021); *Karpilovsky v. All Web Leads, Inc*., No. 1:17-cv-01307 (N.D. Ill. Aug. 8, 2019); *Accardi v. Hartford Underwrites Ins. Co*., No. 18-cvs-2162 (N.C. Bus. Ct.); *Burk v. Direct Energy, LP*, No. 4:19-cv-00663 (S.D. Tex. Oct. 6, 2021); *Bellenger v. Accts. Receivable Mgmt., Inc*., No. 0:19-cv-60205 (S.D. Fla. Feb. 21, 2020); *Drake v. Mirand Response Sys., Inc*., No. 1:19-cv-01458 (S.D. Ind. Aug. 25, 2020); *Fry v. Gen. Revenue Corp*., No. 1:19-cv-00172 (S.D. Ohio Sept. 5, 2019); *Poole v. Benjamin Moore*, No. 3:18-cv-05168 (W.D. Wash. Nov. 28, 2018); *Thomas v. Fin. Corp. of Am.*, No. 3:19-cv-00152 (N.D. Tex. Mar. 29, 2019); *Bonoan v. Adobe Inc.*, No. 3:19-cv-01068 (N.D. Cal. Mar. 10, 2021); *Bonoan v. Am. Express Co*., No. 1:19-cv-01782 (S.D.N.Y. Oct. 11, 2019); *Palmer v. KCI USA, Inc*., No. 4:19-cv-03084 (D. Neb. Sept. 28, 2021).

8.     In addition, MLK serves as Court-appointed Liaison Counsel in *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017).

9.     Attorneys at MLK were also Co-Lead Counsel in *In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PPI of 28.5 million military veterans and active-duty personnel; $20 million settlement fund).

10.     Attorneys at MLK were court-appointed Lead Counsel in *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising for unauthorized disclosure or personal information).

11.     MLK Attorneys have also served as Lead Counsel, Co-Counsel or Class Counsel on dozens of class actions ranging from defective construction materials (*i.e.*, defective radiant heating systems, siding, shingles, and windows), to misrepresented and recalled products (*e.g.*, dog food, prenatal vitamins), and environmental incidents (*e.g.*, the Exxon Valdez, BP Oil Spill).

12.     These cases include: Co-Lead Counsel in *In re Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig.*, MDL No. 2887, No. 2:19-md-02887 (D. Kan. July 30, 2021) (order granting final approval of $12 million settlement entered July 30, 2021); court-appointed Co-Lead Counsel in *In re Deva Concepts Prods. Liab. Litig.*, No. 1:20-cv-01234-GHW (S.D.N.Y. filed Feb. 12, 2020) (order granting preliminary approval of $5.2 million settlement entered July 30, 2021); *Cox v. Shell Oil Co.*, No. 18844, 1995 WL 775363 (Tenn. Ch. Ct. Obion Cnty. Nov. 17, 1995) (defective polybutylene pipe; $950 million settlement); *Hobbie v. RCR Holdings II, LLC*, No. 2:10-cv-00113, MDL No. 2047 (E.D. La. filed Apr. 20, 2010) (354-unit condominium built with Chinese Drywall; settlement for complete remediation at cost of $300 million); *Adams v. Fed. Materials Co., Inc.*, No. 5:05-cv-00090-R, 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006) (350

owners of commercial and residential property whose structures were built with defective concrete; $10.1 million settlement); *In re MI Windows & Doors Inc. Prods. Liab. Litig.*, No. 2:12-MN-00001-DCN, MDL No. 2333, 2015 WL 4487734 (D.S.C. July 23, 2015) (defective windows; claims made settlement for over 1 million homes); *In re Synthetic Stucco Litig.*, No. 5:96-cv-00287-BR, 2004 WL 2881131 (E.D.N.C. May 11, 2004) (settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million); *Posey v. Dryvit Sys., Inc.*, No. 17,715-IV, 2002 WL 34249530 (Tenn. Cir. Ct. Jefferson Cnty. Oct. 1, 2002) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants); *Galanti v. Goodyear Tire & Rubber Co.*, No. 03CV00209, 2004 WL 6033527 (D.N.J. Nov. 17, 2004) (Class counsel; defective radiant heating systems; $330 million settlement); and *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) (Plaintiffs' Executive Committee; +$20 million claims made settlement).

13.     Counsel's years of experience representing individuals in complex class action cases contributed to an awareness of Plaintiffs' settlement leverage, as well as the needs of the Plaintiffs and the class. We believed, and continue to believe, that our clients have claims that would ultimately prevail in the litigation on a class-wide basis. However, we are also aware that a successful outcome is uncertain and could be achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals. In my opinion, as well as the opinion of my co-counsel, based on our substantial experience, the settlement provides significant relief to members of the Class and warrants the Court's preliminary approval.

14.     In the sections that follow, Counsel will detail the lengthy and hard-fought negotiations that resulted in the Agreement now before the Court for preliminary approval. As described below, the settlement provides significant relief to Defendants' employees and

customers. It is, in the opinion of the undersigned and the other Class Counsel, fair, reasonable, adequate, and worthy of preliminary approval.

### Initial Investigation and Communication

15.     Prior to filing Plaintiffs' class action complaints, Class Counsel conducted an investigation of the Plaintiffs' claims, and of the Data Incident.

16.     Plaintiffs' preliminary investigation showed the following facts, alleged in Plaintiffs various complaints:

> a.     Kemper Corporation is one of the nation's leading specialized insurers, offering insurance for home, life, auto, business, property, life, and umbrella insurance. Prior to its acquisition by Kemper in 2018, Defendant Infinity was a provider of auto insurance focused on serving the specialty, nonstandard segment.
>
> b.     Infinity Insurance Company is wholly owned by Kemper Corporation.
>
> c.     In the ordinary course of doing business with Defendants or working for Defendants, employees, customers and prospective customers are required to provide Defendants with personal private information such as names, addresses, Social Security Numbers ("SSN"), driver's license numbers, medical leave information, and/or workers' compensation claim information.

17.     Plaintiffs allege that on December 14, 2020 and March 25, 2021, respectively, Defendants were the targets of two separate security incidents in which an unauthorized user accessed Defendants' network and computer systems, and which resulted in unauthorized access of personal information (the "Project K Data Incident" and "Scraping Incident," respectively, or collectively, the "Data Incidents"). *See* Agr. § I.

18.     Plaintiffs allege that, as a result of the Data Incidents, an unauthorized user gained access to Plaintiffs', Defendants' customers', current and former employees', and agents'

personally identifiable information, including, but not limited to, names, addresses, Social Security Numbers ("SSN"), driver's license numbers, medical leave information, and/or workers' compensation claim information (collectively, "PII"). *Id.*

19.     After Defendants learned of the Data Incidents, they notified the potentially affected individuals that their PII may have been compromised, and offered 12-months of credit monitoring services. Agr. § I.

20.     Of the individuals notified, approximately 5,827,542 were impacted by the Project K Incident and 324,330 individuals were impacted by the Scraping Incident, for a total of 6,151,872 notified individuals. Agr. § I.

21.     After receiving notice that their PHI had been impacted by the Data Incident, Plaintiff Antonio retained my firm. Similarly, Plaintiffs Carrera Aguallo, Hertz, and Holmes retained proposed co-class counsel Wolf Hadenstein Adler Freeman & Herz LLP and Morgan & Morgan Complex Litigation Group.

22.     After an internal investigation, I, along with other proposed Settlement Class Counsel filed Plaintiffs' Complaints.

## **Procedural Posture**

23.     On April 8, 2021, Plaintiffs Carrera Aguallo, Hertz, and Holmes brought suit against Defendants related to claims arising from the Data Incidents. *Carrera Aguallo et al. v. Kemper Corporation et al.*, No. 1:21-cv-01883 (N.D. Ill. Apr. 8, 2021), ECF No. 1.

24.     Plaintiff Antonio filed a separate, related action on April 9, 2021. *Antonio et al v. Kemper Corporation et al.*, Case No. 1:21-cv-01921 (N.D. Ill. Apr. 9, 2021), ECF No. 1 ("Antonio Matter").

25. Counsel for Plaintiffs thereafter learned that Plaintiff Marconis also intended to file suit.

26. Instead of continuing to litigate on separate but parallel tracks, counsel for Plaintiffs convened with Counsel for Defendants and agreed to file a consolidated Amended Complaint.

27. Plaintiff Antonio dismissed her initially filed lawsuit. *See* Antonio Matter, ECF No. 7.

28. On April 19, 2021 Plaintiffs Carrera Aguallo, Hertz, Holmes, Antonio and Macaronis filed their consolidated Amended Class Action Complaint. ECF No. 2.

29. On May 26, 2021, with the consent of Defendants, Plaintiffs filed a Second Amended Class Action Complaint, asserting claims related to the Data Incidents. ECF No. 21.

30. On September 3, 2021, Plaintiffs filed their Third Amended (and operative) Class Action Complaint, adding Plaintiff Veech as an additional named Plaintiff. ECF No. 30.

31. The operative complaint is brought on behalf of Plaintiffs and "[a]ll natural persons residing in the United States whose PII was compromised in the Data Breach announced by Defendants on or about March 16, 2021 and on or about May 25, 2021." ECF No. 30 ¶ 161.

32. The operative complaint also names a California Subclass, defined as: "[a]ll natural persons residing in California whose PII was compromised in the Data Breach announced by Defendants on or about March 16, 2021 and on or about May 25, 2021." ECF No. 30 ¶ 162.

33. The complaint alleges (1) negligence; (2) negligence *per se*; (3) unlawful practices in violation of California's Unfair Competition Law; (4) unfair practices in violation of California's Unfair Competition Law; (5) violation of the California Consumer Privacy Act; (6) violation of the California Consumer Legal Remedies Act; (7) Breach of Implied Contract; (8) Declaratory Judgement; and (9) Unjust Enrichment. ECF No. 30 ¶¶ 173–259.

34.     Plaintiffs seek credit monitoring services for class members, compensatory damages, statutory damages, equitable relief, and such other relief as the Court deems just and proper. ECF No. 30.

## History of Negotiations

35.     Recognizing the risks of protracted litigation, the parties engaged in settlement negotiations.

36.     To facilitate their negotiations, they agreed to use experienced mediator Rodney A. Max of Upchurch Watson White & Max. Mr. Max has extensive experience in class action mediation generally, and data breach mediation in particular.[1] Prior to the mediation, the Parties fully briefed the relevant issues, and Defendants produced nearly 1,000 pages of documents.

37.     On July 12, 2021 the Parties attended a full day mediation via zoom with Rodney A. Max. While the Parties made significant progress toward resolving the case, a few issues remained.

38.     Therefore, the Parties agreed to participate in a second mediation.

39.     On July 30, 2021, the Parties participated in a second full-day mediation, this time with Bennett Picker of Stradley Ronan. Mr. Picker is a heavily credentialed mediator, with extensive experience in class actions, including data breach cases.[2] At all times the negotiations were highly adversarial, non-collusive, and at arms' length.

40.     Following the second mediation, the Parties were able to reach an agreement on all central settlement terms and execute a term sheet.

41.     Thereafter, the Parties asked the Court to vacate all currently pending deadlines and set a deadline for Plaintiffs to file their motion for preliminary approval. ECF No. 27.

---

[1] *See* https://www.uww-adr.com/biography/rodney-a-max.
[2] *See* https://www.stradley.com/professionals/p/picker-bennett-g.

42.     Over the next eight to ten weeks, the Parties continued negotiating the finer points

of the Settlement Agreement, diligently drafting, and finalizing the Settlement, Notice and Claim

Forms.

43.     On September 30, 2021, as per the Court's August 13, 2021 Docket Entry, the

Parties filed a Joint Statement to inform the Court of the status of settlement negotiations—which

were at that time nearly complete.

**The Settlement Agreement**

***Settlement Benefits***

44.     The settlement negotiated on behalf of the Class provides for two separate forms of

relief: (1) monetary relief; and (2) equitable relief in the form of information security

enhancements.[3]

45.     The Settlement Class includes:

> all natural persons residing in the United States who were sent notice letters
> notifying them that their PII was compromised in the Data Incidents announced by
> Defendants on or about March 16, 2021 and on or about May 25, 2021.

The Settlement Class specifically excludes: (i) Defendants and their respective officers and

directors; (ii) all Settlement Class Members who timely and validly request exclusion from the

Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any

other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating,

causing, aiding or abetting the criminal activity occurrence of the Data Incidents or who pleads

*nolo contendere* to any such charge.[4]

46.     Included within the Settlement Class is the California Subclass, defined as:

---

[3] Agr. ¶ 2.
[4] Agr. ¶ 1.27.

all natural persons residing in the State of California who were sent notice letters notifying them that their PII was compromised in the Data Incidents announced by Defendants on or about March 16, 2021 and on or about May 25, 2021.

The California Settlement Subclass specifically excludes: (i) Defendants and their respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incidents or who pleads *nolo contendere* to any such charge.[5]

47.    The Settlement Class includes individuals affected by both the Project K Incident and the Scraping Incident. Approximately 5,827,542 individuals were notified of the Project K Incident and 324,330 individuals were notified of the Scraping Incident. The class numbers a total of 6,151,872 notified individuals.[6]

48.    The monetary relief is divided into two categories.

49.    <u>Automatic Benefits</u>: First, all 6,151,872 Settlement Class Members will be provided access to Aura's Financial Shield Services ("Aura Financial Shield" or "Shield Services") for a period of 18 months from the Effective Date of the settlement *without the need to submit a Settlement Claim*.[7]

50.    This benefit will be provided with the Short Notice as a link with a redeemable code to be used directly with Aura Financial Shield. Financial fraud coverage provided through Aura Financial Shield focuses on protecting financial assets, freezing identity at 10 different Bureaus including the three main credit bureaus, home and property title monitoring, income tax protection

---

[5] Agr. ¶ 1.2.
[6] Agr. § I.
[7] Agr. ¶ 2.2.

and other services. This service is integrated with Early Warning Services to provide real-time monitoring of financial accounts. Financial Shield also carries a $1,000,000 policy protecting the subscriber. This service will be available to all Settlement Class Members for a period of 18 months with the ability of Settlement Class Members to enroll at any point during the 18-month period for the duration of the 18-month period.[8] Financial Shield Services from Aura, like those provided for by the Settlement Agreement, retail for $135 per year.[9] Klinger Decl. ¶ 50. Thus, the value of these services for 18 months is at least $202 per person. *Id.*

51.     Claimed Benefits: In addition to the Automatic Benefits, Settlement Class Members may submit a claim for documented "Out-of-Pocket Losses" and "Lost-Time Losses".

52.     Out-of-Pocket Losses are capped at $10,000 per individual and will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after December 14, 2020, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

53.     Notably, while there is an individual cap of $10,000 per person on Out-of-Pocket Losses, there is no cap in the aggregate, meaning if every Settlement Class Member submitted a valid claim for $10,000 in Out-of-Pocket Losses, the Settlement Agreement would require every Settlement Class Member be paid.[10]

---

[8] Agr. ¶ 2.2.
[9] *See* https://www.aura.com/pricing (last accessed October 13, 2021). The service costs $10 per month with a nominal service fee each month.
[10] Agr. ¶ 2.3.

54.     Lost-Time Losses can include up to 3 hours claimed at $18/hour with an attestation and brief description; and up to 3 hours of documented Lost Time at $18/hour, or if work was missed, they can be reimbursed at the rate of documented compensation up to $50/hour.[11]

55.     <u>California Subclass Claimed Benefits</u>: In addition to the above benefits, California Settlement Subclass Members will also be eligible for an additional benefit of $50 per California Settlement Subclass Member, by attesting that they were a resident of California at the time of the Data Incidents. The $50 payment subject to a potential *pro rata* reduction.[12]

56.     A pro rata reduction of the California Claims will only occur *if* the total of Lost-Time Losses and California Claims exceeds $4,000,000.[13]

57.     In addition to the monetary benefits described, the Settlement Agreement also provides for equitable relief in the form of changes to Defendants' business practices. Based on confirmatory discovery provided by Defendants, Defendants have taken or will be taking steps listed in **Exhibit E** to the Settlement Agreement, which Plaintiffs have sought to file under seal.[14]

### Notice and Claims Process

58.     Subject to Court approval, the Parties have agreed to use RG/2 Claims Administration LLC as the Claims Administrator.

59.     Within thirty (30) days after the entry of the Preliminary Approval Order ("Notice Commencement Date") and to be substantially completed not later than forty-five (45) days after entry of the Preliminary Approval Order, and subject to the requirements of this Settlement Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class via email to the email addresses in Defendants' possession. Where the Short

---

[11] Agr. ¶ 2.3.
[12] Agr. ¶ 2.3.
[13] Agr. ¶ 2.3.
[14] Agr. ¶ 2.4.

Notice is undeliverable via email or where an email address is not available, the Short Notice will be sent via mail to the address in Defendant's possession. Prior to mailing addresses will be run through the National Change of Address database. Short Notices returned with forwarding addresses will be forwarded, and those returned with no forwarding address will be resent to any valid address found after performing a skip trace.[15]

60.     The Claims Administrator will also be responsible for creating a Settlement Website, and shall maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, the Third Amended Complaint, and any other materials agreed upon or requested by the Court. Settlement Class Members will be able to submit claim forms through the Settlement Website.[16]

61.     The Claims Administrator will also create and maintain a toll-free help line with a live operator to provide Settlement Class Members with additional information about the settlement. The Claims Administrator also will provide copies of the Long Notice and paper Claim Form, as well as this Settlement Agreement, upon request.[17]

62.     Additionally, Defendants will post a link to the Settlement Website on their own sites, Kemper.com and https://www.infinityauto.com.[18]

63.     Notice is to be paid for by Defendants, separate and apart from any funds available to Settlement Class Members.[19]

---

[15] Agr. ¶ 3.2(d).
[16] Agr. ¶ 3.2(c).
[17] Agr. ¶ 3.2(f).
[18] Agr. ¶ 3.2(g).
[19] Agr. ¶ 3.2.

64.     The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object.

65.     Class Members will have 90 days from the commencement of the notice mailing to submit their claim form to the Claims Administrator, either by mail or online.[20]

66.     The Claims Administrator has authority to assess the validity of claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Class Member 30-days to cure the defect before rejecting the claim. Settlement Class Members will also have 30-days from receipt of the offer to accept or reject payment. Upon rejection, the Claims Administrator may, in its judgment, reconsider its initial determination and make an additional offer. Claims will be paid within 60-days of the Effective Date, or within 30-days of the date that the claim is approved, whichever is later.[21]

67.     Any Class Member who wishes to opt-out of the settlement will have until 60 days after the commencement of Notice to provide written notice that they would like to be excluded from the Settlement Class.[22]

68.     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to opt-out of the Settlement Class.[23]

---

[20] Agr. ¶ 1.7.
[21] Agr. ¶¶ 1.7, 2.6, 8.2.
[22] Agr. ¶ 1.18.
[23] Agr. ¶ 4.1.

69.     Similarly, Class Members who wish to object to the terms of the Settlement Agreement must do so in writing, and send their objection the Settlement Administrator 60 days from the date on which Notice commences.[24]

70.     The written objection must include (i) the objector's full name and address; (ii) the case name and docket number, *Aguallo, et al. v. Kemper Corp. & Infinity Insurance Co.*, Case No. 1:21-cv-01883 (N.D. Ill.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of the objector's settlement notice, copy of original notice of one of the Data Incidents, or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Proposed Settlement Class Counsel and counsel for Defendants. The objector or his or her counsel may also file Objections with the Court through the Court's ECF system, with service on Proposed Settlement Class Counsel and Defendants' Counsel made through the ECF system.[25]

---

[24] Agr. ¶ 1.7.
[25] Agr. ¶ 5.1.

*Attorneys' Fees, Costs, and Service Awards*

71.     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to Representative Plaintiffs, until after the substantive terms of the settlement had been agreed upon, other than that Defendants would pay reasonable attorneys' fees, costs, expenses, and a service award to Representative Plaintiffs as may be agreed to by Defendants and Proposed Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court.

72.     Defendants have agreed to pay attorneys' fees and litigation costs in the amount of up to $2,500,000 as approved by the Court.[26] Payment of approved attorneys' fees is to be made within 30-days of the Effective Date.[27]

73.     The Settlement Agreement also provides for a reasonable service award to each Plaintiff in the amount of $1,500.[28]

74.     The service award is meant to compensate Plaintiffs for their efforts which include maintaining contact with counsel, assisting in the investigation of the case, reviewing pleadings, remaining available for consultation throughout mediations, for answering counsel's many questions, and for reviewing the Settlement Agreement.

75.     Plaintiffs will seek the Court's approval of the requested attorneys' fees, costs and service award through separate motion.

---

[26] Agr. ¶ 7.2.
[27] Agr. ¶ 7.4.
[28] Agr. ¶ 7.3.

\*     \*     \*     \*     \*     \*     \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 14th day of October, 2021, in Chicago, Illinois.

_Gary M Klinger_

Gary M. Klinger

# EXHIBIT 2



# FIRM RESUME

With offices in Washington, D.C., and Chicago, Illinois, Mason Lietz & Klinger LLP is dedicated to representing plaintiffs in class actions, mass torts and individual actions in courts throughout the United States.

## ATTORNEY PROFILES

### Gary E. Mason
### Managing Partner

Gary is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Gary has recovered more than $1.5 billion in the 30 years he has represented plaintiffs.

With his broad experience, Gary is nationally known for representing consumers in class actions involving a wide range of defective products, including Chinese drywall, fire retardant plywood, polybutylene pipe, high-temperature plastic venting, hardboard siding, pharmaceutical products, consumer electronics and automobiles.

Gary has served in leadership positions in many consumer class actions in State and Federal Courts nationwide as well as in Multi-District Litigation. Gary writes and speaks frequently on topics related to class action litigation. He was the 2012-2013 Co-Chair of the Class Action Litigation group for the American Association for Justice. He has repeatedly been named as a Washington, DC Superlawyer for Class Actions.

Gary also serves as Executive Director and President of the Board of Directors of The Bethesda Blues and Jazz Foundation.

Gary graduated magna cum laude, Phi Beta Kappa, from Brown University in 1984 and earned his law degree from Duke University Law School. He then clerked for the Honorable Andrew J. Kleinfeld, U.S. District Court Judge, in Anchorage, Alaska. Gary is admitted to practice law in Washington, D.C, New York and Maryland. He is a member of the Bar of the United States Supreme Court and numerous federal Courts of Appeals and District Courts across the country.

### David Lietz
### Partner

David Lietz's practice concentrates in the areas of complex civil litigation, consumer class actions, and mass torts in federal and state courts nationwide. His class action experience includes a wide range of subject matters, including violations of federal consumer protection laws (such as the FDCPA and TCPA), violations of state consumer protection law, defective products, wage abuse, and data privacy. Mass tort experience includes pharmaceutical litigation.

David also has decades of experience as a trial lawyer, representing plaintiffs in complex actions involving wrongful death and critical injury. Through both trials and settlement, he has recovered millions and millions of dollars for the victims of commercial trucking accidents,

commercial airplane crashes, bus crashes, manufacturing and power plant explosions and fires, and construction related injuries and deaths.

David's practice includes appellate work, having briefed and argued multiple cases before federal appellate courts, including *Home Depot v. Jackson* at the Fourth Circuit. David then served as part of the winning brief-writing and oral advocacy team for Home Depot v. Jackson at the United States Supreme Court.

David holds an AV rating from the Martindale-Hubbell Law Directory, an honor he has held since 1998. He is listed in the Bar Register of Preeminent Lawyers, Washington D.C. & Baltimore's Top Rated Lawyers, 2012 - 2015 edition, and has a Martindale-Hubbell Client Distinction Award.

Outside of the law, David served for 12 years on the Board of Regents of his alma mater, Luther College, and was appointed Regent Emeritus in 2017. He was a member of the Luther College Presidential Search Committee, and received the Luther College Distinguished Service Award in 2018.

David received his undergraduate degree in Political Science from Luther College in 1988, where he graduated with honors. He received his J.D. from the Georgetown University Law Center in 1991. He is admitted to practice law in the District of Columbia, and is admitted to practice before a number of federal district and appellate courts.

**Gary M. Klinger**
**Partner**

Gary is a natural competitor and relishes the challenge of being a litigator. He is a tenacious and dedicated advocate of his client's interests and welcomes every opportunity to help them prevail in complex, high-stakes litigation.

Gary represents clients in class actions involving wide-ranging theories of liability including consumer fraud, breach of contract, privacy violations, conspiracy, violation of the antitrust laws, and other torts. He has been appointed as class counsel to millions of consumers across the country. Gary has recovered tens of millions of dollars for consumers in class action settlements.

Prior to forming Mason Lietz & Klinger LLP, Gary was an attorney at one of the premier litigation firms in Chicago where he focused on class action litigation. Gary has successfully represented clients from pre-litigation disputes through trials and appeals in federal and state jurisdictions throughout the country.

Gary is a graduate of the University of Illinois where he received both his undergraduate and law degrees. He is licensed to practice in Illinois and numerous federal district courts across the country.

**Danielle L. Perry**
**Partner**

Danielle's primary focus is in protecting employee and consumer rights through class action lawsuits.

Danielle graduated from the University of California, Berkeley in 2010 with a Bachelor of Arts in Peace and Conflict Studies. During her undergraduate studies, she managed and rowed for the university's Lightweight Crew Team and also spent a year in Budapest, Hungary, where she interned with the Helsinki Committee, an international human rights organization. Danielle went on to attend Loyola Law School, where she was on the Board of the Public Interest Law Foundation and headed efforts to promote alternative dispute resolution, including founding a club structured to inform students of developments in mediation and working at The Center for Conflict Resolution.

During law school, she held an externship as a law clerk for the Honorable Victoria Chaney of the California Court of Appeals, worked with the Labor Division of the Los Angeles Office of the City Attorney, and was a Board Member for the Public Interest Law Foundation.

Prior to joining Mason Lietz & Klinger, Danielle practiced at a plaintiffs' class action firm in Los Angeles, where she worked as an advocate for victims of wage theft–employees who were being deprived of pay and not provided with legally required meal and rest periods. Danielle spent much of her time working on lawsuits brought to recover lost wages and penalties for banking, manufacturing, retail, property management, and trucking industry employees.

Danielle is a member of the American Association for Justice and regularly volunteers as an advising attorney at the Employment Justice Center.

## NOTABLE CLASS ACTION CASES LITIGATED BY MLK ATTORNEYS

### Antitrust

*In re: TFT-LCD (Flat Panel) Antitrust Litigation,* No. 3:07-cv-01827, MDL No. 1827 (N.D. Cal.) (combined settlement totaling nearly $1.1 billion in suit alleging the illegal formation of an international cartel to restrict competition in the LCD panel market) (2012).

### Appliances

*Ersler, et. al v. Toshiba America et. al*, No. 07- 2304 (D.N.J.) (settlement of claims arising from allegedly defective television lamps) (2009).

*Maytag Neptune Washing Machines* (class action settlement for owners of Maytag Neptune washing machines).

*Stalcup, et al. v. Thomson, Inc.* (Ill. Cir. Ct.) ($100 million class settlement of clams that certain GE, PROSCAN and RCA televisions may have been susceptible to temporary loss of audio when receiving broadcast data packages that were longer than reasonably anticipated or specified) (2004).

*Hurkes Harris Design Associates, Inc., et al. v. Fujitsu Computer Prods. of Am., Inc.* (settlement provides $42.5 million to pay claims of all consumers and other end users who bought certain Fujitsu Desktop 3.5" IDE hard disk drives) (2003).

*Turner v. General Electric Company*, No. 2:05-cv-00186 (M.D. Fla.) (national settlement of claims arising from allegedly defective refrigerators) (2006).

## Automobiles

*In re General Motors Corp. Speedometer Prods. Liability Litig.,* MDL 1896 (W.D. Wash.) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective speedometers) (2007).

*Baugh v. The Goodyear Tire & Rubber Company* (class settlement of claims that Goodyear sold defective tires that are prone to tread separation when operated at highway speeds; Goodyear agreed to provide a combination of both monetary and non-monetary consideration to the Settlement Class in the form of an Enhanced Warranty Program and Rebate Program) (2002).

*Lubitz v. Daimler Chrysler Corp.,* No. L-4883-04 (Bergen Cty. Super. Ct, NJ 2006) (national settlement for repairs and reimbursement of repair costs incurred in connection with defective brake system; creation of $12 million fund; 7th largest judgment or settlement in New Jersey) (2007).

*Berman et al. v. General Motors LLC,* Case No. 2:18-cv-14371 (S.D. Fla.) (Co-Lead Counsel; national settlement for repairs and reimbursement of repair costs incurred in connection with Chevrolet Equinox excessive oil consumption).

## Civil Rights

*In re Black Farmers Discrimination Litigation*, Case No. 1:08-mc-00511 (D.D.C.) ($1.25 billion settlement fund for black farmers who alleged U.S. Department of Agriculture discriminated against them by denying farm loans) (2013).

*Bruce, et. al. v. County of Rensselaer et. al.,* Case No. 02-cv-0847 (N.D.N.Y.) (class settlement of claims that corrections officers and others employed at the Rensselaer County Jail (NY) engaged in the practice of illegally strip searching all individuals charged with only misdemeanors or minor offenses) (2004).

## Commercial

*In re: Outer Banks Power Outage Litigation,* 4:17-cv-141 (E.D.N.C) (Co-Lead Counsel; $10.35 million settlement for residents, businesses, and vacationers on Hatteras and Ocracoke Islands who were impacted by a 9-day power outage) (2018)

## Construction Materials

*Cordes et al v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB (D. Colo.) (class action arising out of defective brass fittings; court-appointed member of Plaintiffs' Steering Committee) (2011).

*Elliott et al v. KB Home North Carolina Inc. et al* 08-cv-21190 (N.C. Super. Ct. Wake County) (Lead Counsel; class action settlement for those whose homes were constructed without a weather-resistant barrier)(2017)

*In re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2514 (D.S.C.)(class action arising from allegedly defective windows; Court-appointed Co-Lead Counsel).

*In re MI Windows and Doors, Inc., Products Liability Litigation*, MDL No. 2333 (D.S.C) (National class action settlement for homeowners who purchased defective windows; Court-appointed Co-Lead Counsel).

*In re: Atlas Roofing Corporation Chalet Shingle Products Liability Litig.*, MDL No. 2495 (N.D. Ga.) (class action arising from allegedly defective shingles; Court-appointed Co-Lead Counsel).

*Helmer et al. v. Goodyear Tire & Rubber Co.*, No. 12-cv-00685-RBJ (D. Colo. 2012) (class action arising from allegedly defective radiant heating systems; Colorado class certified, 2014 WL 3353264, July 9, 2014)).

*In re: Zurn Pex Plumbing Products Liability Litigation*, No. o:08-md-01958, MDL No. 1958 (D. Minn.) (class action arising from allegedly plumbing systems; member of Executive Committee; settlement) (2012).

*Hobbie, et al. v. RCR Holdings II, LLC, et al.*, No. 10-1113 , MDL No. 2047 (E.D. La.) ($30 million settlement for remediation of 364 unit residential high-rise constructed with Chinese drywall) (2012).

*In re: Chinese Manufactured Drywall Products Liability Litigation,* No. 2:09-md-02047, MDL No. 2047 (E.D. La.) (litigation arising out of defective drywall) (appointed Co-Chair, Insurance Committee) (2012).

*Galanti v. Goodyear Tire & Rubber Co.*, No. 03-209 (D.N.J. 2003) (national settlement and creation of $330 million fund for payment to owners of homes with defective radiant heating systems) (2003).

*In re Synthetic Stucco Litig.,* Civ. Action No. 5:96-CV-287-BR(2) (E.D.N.C.) (member of Plaintiffs' Steering Committee; settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million).

*In re Synthetic Stucco (EIFS) Prods. Liability Litig.,* MDL No. 1132 (E.D.N.C.) (represented over 100 individuals homeowners in lawsuits against homebuilders and EIFS manufacturers).

*Posey, et al. v. Dryvit Systems, Inc.,* Case No. 17,715-IV (Tenn. Cir. Ct) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants) (2002).

*Sutton, et al. v. The Federal Materials Company, Inc., et al,* No. 07-CI-00007 (Ky. Cir. Ct) (Co-Lead Counsel; $10.1 million class settlement for owners of residential and commercial properties constructed with defective concrete).

*Staton v. IMI South, et al.* (Ky. Cir. Ct.) ((Co-Lead Counsel; class settlement for approximately $30 million for repair and purchase of houses built with defective concrete).

*In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation*, No. 15-cv-0018, MDL No. 2577 (D.N.J.) (Lead Counsel; national settlement to homeowners who purchased defective GAF decking and railings).

*Bridget Smith v. Floor and Decor Outlets of America, Inc*., No. 1:15-cv-4316 (N.D. Ga.) (Co-Lead Counsel; National class action settlement for homeowners who purchased unsafe laminate wood flooring).

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation* MDL No. 1:15-md-2627 (E.D.Va.) (Formaldehyde case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Lumber Liquidators Chinese-Manufactured Laminate Flooring Durability Marketing, Sales Practices Litigation* MDL No. 1:16-md-2743 (E.D.Va.) (Co-Lead Counsel; Durability case; $36 million national class action settlement for member who purchased a certain type of laminate flooring).

*In re Windsor Wood Clad Window Products Liability Litigation* MDL No. 2:16-md-02688 (E.D. Wis.) (National class action settlement for homeowners who purchased defective windows; Court-appointed Lead Counsel).

*In re Allura Fiber Cement Siding Products Liability Litigation* MDL No. 2:19-md-02886 (D.S.C.) (class action arising from allegedly defective cement board siding; Court-appointed Lead Counsel).

## Environmental

*Nnadili, et al. v. Chevron U.S.A., Inc*, No. 02-cv-1620 (D.D.C.) ($6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station) (2008).

*In re Swanson Creek Oil Spill Litigation*, No. 00-1429 (D. Md.) (Lead Counsel; $2.25 million settlement of litigation arising from largest oil spill in history of State of Maryland) (2001).

## Fair Labor Standards Act/Wage and Hour

*Craig v. Rite Aid Corporation*, Civil No. 08-2317 (M.D. Pa.) (FLSA collective action and class action settled for $20.9 million) (2013).

*Stillman v. Staples, Inc.,* Civil No. 07-849 (D.N.J. 2009) (FLSA collective action, plaintiffs' trial verdict for $2.5 million; national settlement approved for $42 million) (2010).

*Lew v. Pizza Hut of Maryland, Inc.*, Civil No. CBB-09-CV-3162 (D. Md.) (FLSA collective action, statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages) (2011).

## Food  and Drug Misrepresentation

*Smid et al. v. Nutranext, LLC*, No. 20L0190 (St. Clair Ctuy., Ill., 2020) ($6.7 million settlement)

*In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litg.*, MDL No. 2887, No. 2:19-md-02887 (D. Kan. filed June 6, 2019) (Court-appointed Co-Lead Counsel)

## Financial

*Roberts v. Fleet Bank (R.I.), N.A.*, Civil Action No. 00-6142 (E. D. Pa. 2003) ($4 million dollar settlement on claims that Fleet changed the interest rate on consumers' credit cards which had been advertised as "fixed.").

*Penobscot Indian Nation et al v United States Department of Housing and Urban Development*, N. 07-1282 (PLF) (D.D.C. 2008) (represented charitable organization which successfully challenged regulation barring certain kinds of down-payment assistance; Court held that HUD's promulgation of rule violated the Administrative Procedure Act),

## Insurance

*Young, et al.  v. Nationwide Mut. Ins. Co, et al*., No. 11-5015 (E.D. Ky. 2014) (series of class actions against multiple insurance companies arising from unlawful collection of local taxes on premium payments; class certified and affirmed on appeal, 693 F.3d 532 (6th Cir., 2012); settlements with all defendants for 100% refund of taxes collected).

MLK Firm Resume
Page 9 of 9

*Nichols v. Progressive Direct Insurance Co., et al.*, No. 2:06cv146 (E.D. Ky. 2012) (Class Counsel; class action arising from unlawful taxation of insurance premiums; statewide settlement with Safe Auto Insurance Company and creation of $2 million Settlement Fund; statewide settlement with Hartford Insurance Company and tax refunds of $1.75 million )

## **Privacy/Data Breach**

*In Re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-1393 (ABJ), MDL No. 2664 (D.D.C.) (court appointed interim Liaison Counsel).

*In re Google Buzz Privacy Litigation,* No. 5:10-cv-00672 (N.D. Cal. 2010) (court-appointed Lead Class Counsel; $8.5 million cy pres settlement).

*In re: Dept. of Veterans Affairs (VA) Data Theft Litig.,* No. 1:2006-cv-00506, MDL 1796 (D.D.C. 2009) (Co-Lead counsel representing veterans whose privacy rights had been compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations).

*In re: Adobe Systems Inc. Privacy Litigation,* No. 5:13-cv-05226 (N.D. Cal. 2015) (settlement requiring enhanced cyber security measures and audits).