**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IRMA CARRERA AGUALLO, DROR HERTZ, KELVIN HOLMES, MELISSA ANTONIO, MARY MACARONIS, and GREGGORY VEECH, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>KEMPER CORPORATION and INFINITY INSURANCE COMPANY,<br><br>        Defendants. | Case No. 1:21-cv-01883<br><br>Honorable Martha M. Pacold |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**SECTION:**                                                                                                    **PAGE:**

TABLE OF CONTENTS............................................................................................................II

TABLE OF AUTHORITIES ................................................................................................ IV

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF THE LITIGATION ...................................................................... 2

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ................................... 4

     A.    Settlement Class .............................................................................................. 4

     B.    The Settlement Benefits ................................................................................. 4

        1.    Monetary Benefits for Settlement Class Members ................................. 4

        2.    Remedial Measures Attributable to the Settlement ............................... 6

     C.    Notice and Claims Process............................................................................. 6

        1.    Notice ........................................................................................................... 6

        2.    Claims, Objections, and Requests for Exclusion .................................... 7

     D.    Attorneys' Fees, Costs, and Service Awards ............................................... 7

IV.     ARGUMENT ............................................................................................................ 8

     A.    Certification of the Settlement Class is Appropriate ................................. 8

     B.    The National Class and California Subclass Meet the Requirements
           of Rule 23(a) .................................................................................................... 9

        1.    The Members of the Settlement Class and California Settlement
              Subclass are so Numerous that Joinder of All of Them is Impracticable. ........... 10

        2.    Questions of Law and Fact are Common to the Members of the
              Settlement Classes. .................................................................................. 10

        3.    Plaintiffs' Claims are Typical of the Claims of the Members of the
              Classes They Represent. .......................................................................... 11

4.      The Adequacy Requirement is Satisfied.......................................................... 12

5.      The Predominance and Superiority Requirements of Rule 23(b)(3)
Are Satisfied................................................................................................ 13

       a.      Common Questions of Fact and Law Predominate. ...................... 13

       b.      A Class Action is the Superior Method for Resolving These Claims........... 15

C.      Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel.................... 16

D.      The Settlement Should be Finally Approved as Fair, Reasonable
and Adequate .......................................................................................... 16

     1.      The Class Representatives and Settlement Class Counsel have
Adequately Represented the Settlement Class..................................... 18

     2.      The Settlement was Negotiated at Arm's-Length by Vigorous
Advocates, and There has been no Fraud or Collusion. ..................... 20

     3.      The Settlement Provides Substantial Relief for the Class. ................. 21

       a.      The Costs, Risks, and Delay of Trial and Appeal Favor
Approval of the Settlement. ........................................................... 23

       b.      The Method of Providing Relief is Effective.................................. 24

       c.      The Proposed Award of Attorneys' Fees is Fair and Reasonable. ............... 25

       d.      There are No Additional Agreements Required to be Identified
Under Rule 23(e)(3). ..................................................................... 25

     4.      The Settlement Agreement Treats Class Members Equitably
Relative to Each Other. .................................................................. 25

     5.      The Opinions of Class Counsel, Class Representatives, and
Absent Settlement Class Members Favor Approval of the Settlement............... 26

V.      CONCLUSION........................................................................................ 27

## **TABLE OF AUTHORITIES**

**CASES:**                                                                      **PAGE(S):**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). .................................................. 8, 9, 13, 15

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980). ........................ 17, 18

*Atkinson v. Minted, Inc.*, No. 3:20-cv-03869-VC,
    2021 WL 2411041 (N.D. Cal. May 14, 2021). ......................................................... 23

*Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800,
    2013 WL 10167232 (S.D. Fla. Oct. 7, 2013)................................................................. 9

*Cath. Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108 (2d Cir. 2013). .............................. 13

*CV Reit, Inc. v. Levy*, 144 F.R.D. 690 (S.D. Fla. 1992)........................................................... 12

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). ............................................................ 20

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)........................................................................ 17

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953,
    2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009). ......................................... 19

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016). ......................................... 22

*Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449 (10th Cir. 1969). ......................................... 21

*Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700,
    2014 WL 7184039 (S.D. Fla. Dec. 17, 2014)......................................................... 27

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE),
    2010 WL 2643307 (S.D.N.Y. June 25, 2010). ...................................................... 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ......................................................... 22

*Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG,
    2018 WL 1871449 (D. Kan. Feb. 15, 2018). .......................................................... 14

*Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)........................................ 12

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018).................... 14

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010)... 17, 21

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009). .................................... 11

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993). ........................... 26

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019). ................................................... 9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). ... 24

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012). ............................................................... 9, 15

*In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000). .................................. 27

*In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493,
   2012 WL 366852 (N.D. Ill. Jan. 31, 2012). ............................................................. 17

*In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)..................................... 18

*In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015)............. 9

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016). ........................... 14

*In re TikTok, Inc., Consumer Priv. Litig.*, MDL No. 3948,
   2021 WL 4478403 (N.D. Ill. Sept. 30, 2021). ......................................................... 8, 12

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)........................................................................ 17

*Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011). .................... 20

*Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307,
   2018 WL 3108884 (N.D. Ill. June 25, 2018). ...................................................... 10, 19

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). ................................................................. 12

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005)........................................... 9

*McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002). ................................................ 10

*Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)........ 20

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006). .......................................................... 12

*Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211 (N.D. Ill. 2002). ................................. 11

*Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993). .......................... 12

*Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015). .......................................... 13

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482,
    2010 WL 2486346 (C.D. Cal. June 15, 2010). ........................................... 20

*Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. 2013).............. 10

*Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723,
    2016 WL 7426134 (N.D. Ill. 2016). .................................................... 11

*Steele v. GE Money Bank*, No. 1:08-CIV-1880,
    2011 WL 13266350 (N.D. Ill. May 17, 2011). .................................... 20, 21

*Steele v. GE Money Bank*, No. 1:08-CIV-1880,
    2011 WL 13266498 (N.D. Ill. June 1, 2011). ....................................... 20

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)........................... 21

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). ......................................... 14

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). ..................................... 10, 13

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457,
    2016 WL 4505169 (N.D. Ill. Aug. 29, 2016). ................................ 20, 21, 24

## **STATUTES:**                            **PAGE(S):**

California Consumer Privacy Act ("CCPA"),
    Cal. Civ. Code §§ 1798.100, *et seq.* (2018)................................................ 22, 23, 26

## **OTHER AUTHORITIES:**                     **PAGE(S):**

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). ................................................ 20

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)..................................................... 17

7AA C. Wright, A. Miller, & M. Kane,
    *Federal Practice and Procedure* § 1778 (3d ed. 2005)......................................... 14

*Manual for Complex Litig.* § 21.632 (4th ed. 2004). ................................................ 8

*Newberg on Class Actions* § 11:50. ......................................................... 21

**<u>RULES</u>:**                                                                    **<u>PAGE(S)</u>:**

Fed. R. Civ. P. 12(b)(6)...................................................................................... 24

Fed. R. Civ. P. 23(a) ................................................................... passim

Fed. R. Civ. P. 23(b). .................................................................... passim

Fed. R. Civ. P. 23(c). ........................................................................ 25

Fed. R. Civ. P. 23(e) ..................................................................... passim

Fed. R. Civ. P. 23(g). ....................................................................... 16

Fed. R. Civ. P. 23............................................................... 10, 11, 16

Fed. R. Civ. P. 56............................................................................ 24

On October 14, 2021, Plaintiffs Irma Carrera Aguallo, Dror Hertz, Kelvin Holmes, Mary Macaronis, and Greggory Veech (collectively, "Plaintiffs") moved for preliminary approval of the proposed class action settlement and for certification of the Settlement Class in the above captioned action ("Prelim. Approval Mot."). ECF No. 35. The Court preliminarily approved the settlement on October 27, 2021, finding that the terms of the settlement were "fair, reasonable, and adequate" and that the Class should be given notice. ECF No. 43 ("Prelim. Approval Order").

Plaintiffs now move for final approval of the settlement and for certification of the Settlement Class. As set forth in the Declaration of Melissa Baldwin Regarding Notice to the Class ("Baldwin Declaration" or "Baldwin Decl."), the Claims Administrator, RG/2, implemented an extensive Court-approved Notice Program with direct notice of the settlement delivered by email to the valid email addresses in Defendants' possession and via U.S. first-class mail otherwise. As further set forth in the Baldwin Declaration, although the claims, opt-out and objection deadlines have not yet passed, the response from the Settlement Class has been positive: to date RG/2 has received more than 500 claims, no opt-outs and no objections. *See* Baldwin Decl. ¶¶ 12–13.

## I.     INTRODUCTION

The present case arises out of two separate data security incidents (the "Data Incidents") that allegedly compromised the personal and private identifying information of over six million of Defendants' employees and/or customers. Plaintiffs, individually and on behalf of the Settlement Class (as defined below), filed suit against Defendants Kemper Corporation and Infinity Insurance Company (collectively, "Defendants" and, together with Plaintiffs, the "Parties"), alleging Defendants failed to adequately protect their personal and private information. Throughout the pendency of the litigation, Defendants have denied allegations of wrongdoing and liability and asserted defenses to the individual and representative claims.

As discussed in detail in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement (ECF No. 35-1), the settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. Through mediation and extensive negotiations, the Parties reached an agreement that provides for significant monetary and equitable relief for the Settlement Class. All 6,151,872 Settlement Class Members will be provided automatic access to 18-months of credit monitoring and financial services. Additionally, every Settlement Class Member has the opportunity to make a claim for up to $10,000 in reimbursements for out-of-pocket losses, including for up to six hours in lost time. An additional benefit in the form of a cash payment of up to $50 is available for each California Settlement Subclass Member.

If approved, the settlement will resolve all claims arising out of the Data Breach and will provide Class Members with the precise relief this action was filed to obtain. In light of the current pandemic that has upended the lives and finances of so many, immediate relief is now more valuable than ever. Accordingly, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiffs respectfully request that the Court enter an Order granting final approval of the settlement and finally certifying the Settlement Class.

## II.     <u>SUMMARY OF THE LITIGATION</u>

Plaintiffs allege that on December 14, 2020 and March 25, 2021, respectively, Defendants were the targets of two separate security incidents in which an unauthorized user accessed Defendants' network and computer systems, and which resulted in unauthorized access of personal information (the "Project K Data Incident" and "Scraping Incident," respectively, or collectively, the "Data Incidents"). *See* Decl. of Gary Klinger ¶ 23, filed concurrently herewith ("Klinger Decl."). Plaintiffs allege that, as a result of the Data Incidents, an unauthorized user gained access

to Plaintiffs' and Defendants' customers', current and former employees' and agents' personally identifiable information, including, but not limited to, names, addresses, Social Security numbers ("SSN"), driver's license numbers, medical leave information, and/or workers' compensation claim information (collectively, "PII"). *Id.* ¶ 24.

On April 8, 2021, Plaintiffs Carrera Aguallo, Hertz, and Holmes brought suit against Defendants related to claims arising from the Project K Data Incident. *Id.* ¶ 29. Plaintiff Antonio filed a separate, related action on April 9, 2021. *Id.* ¶ 30. Counsel for Plaintiffs thereafter learned that Plaintiff Macaronis also intended to file suit. *Id.* ¶ 31. Instead of continuing to litigate on separate but parallel tracks, counsel for Plaintiffs convened with counsel for Defendants and agreed to file a Consolidated Amended Complaint. *Id.* ¶ 32. On April 19, 2021, Plaintiffs Carrera Aguallo, Hertz, Holmes, Antonio and Macaronis filed their consolidated Amended Class Action Complaint, followed shortly by a Second Amended Class Action Complaint. *Id.* ¶¶ 27–29; ECF Nos. 2, 21. On September 3, 2021, Plaintiffs filed their Third Amended (and operative) Class Action Complaint, adding Plaintiff Veech as an additional named Plaintiff in connection with the Scraping Incident. Klinger Decl. ¶ 36; ECF No. 30.

Recognizing the risks of protracted litigation, the Parties engaged in settlement negotiations. *Id.* ¶ 41. To facilitate their negotiations, they agreed to use experienced mediator Rodney A. Max of Upchurch Watson White & Max. *Id.* ¶ 42. On July 12, 2021, the Parties attended a full-day mediation via Zoom with Mr. Max. While the Parties made significant progress toward resolving the case, a few issues remained. *Id.* ¶ 43. On July 30, 2021, the Parties participated in a second full-day mediation, this time with mediator Bennett Picker of Stradley Ronan Stevens & Young. *Id.* ¶ 44. Following the second mediation, the Parties were able to reach an agreement on all central settlement terms and execute a term sheet. *Id.* ¶ 45. Over the next eight to ten weeks,

the Parties continued negotiating the finer points of and drafting the Settlement Agreement and Notice and Claim Forms, and Plaintiffs drafted the Motion for Preliminary Approval for presentation to the Court. *Id.* ¶ 47.

## III. THE TERMS OF THE SETTLEMENT AGREEMENT

### A. Settlement Class

The settlement provides for a nationwide Settlement Class as well as a California Settlement Subclass with definitions that mirror those in the operative complaint:

> **The Settlement Class**: all natural persons residing in the United States who were sent notice letters notifying them that their PII was compromised in the Data Incidents announced by Defendants on or about March 16, 2021 and on or about May 25, 2021.

> **The California Settlement Subclass**: all natural persons residing in the State of California who were sent notice letters notifying them that their PII was compromised in the Data Incidents announced by Defendants on or about March 16, 2021 and on or about May 25, 2021.

*Id.* ¶¶ 52–53. As defined, the Settlement Class and California Settlement Subclass include individuals affected by both the Project K Incident and the Scraping Incident. *Id.* ¶ 54.

### B. The Settlement Benefits

The settlement provides for both monetary and equitable relief.

#### 1. Monetary Benefits for Settlement Class Members

There are three types of monetary relief provided for by the Settlement Agreement. First, upon final approval of the Settlement Agreement, all 6,151,872 Settlement Class Members will be provided ***automatic*** access to Aura's Financial Shield Services for a period of 18 months from the Effective Date of the settlement ***without the need to submit a Settlement Claim***. *Id.* ¶ 55. Each Settlement Class Member received a unique code with the Short Form Notice to be used to enroll directly with Aura Financial Shield. *Id.* ¶ 56. Upon the Effective Date of the settlement, Settlement

Class Members may enroll at any point during the 18-month period for the duration of the 18-month period.[1] *Id.*

Second, Settlement Class Members who submit a valid and timely Claim Form may receive compensation for "Out-of-Pocket Losses" and "Lost-Time Losses." *Id.* ¶ 57. While there is an individual cap of $10,000 per person on Out-of-Pocket Losses, there is no cap in the aggregate, meaning if every Settlement Class Member submitted a valid claim for $10,000 in Out-of-Pocket Losses, the Settlement Agreement would require every Settlement Class Member be paid. *Id.* ¶ 58.

Settlement Class Members can also claim up to six hours in lost time spent dealing with the effects of the Data Incidents, referred to as "Lost-Time Losses." *Id.* ¶ 60. Three hours of lost time can be claimed at $18 per hour with a simple attestation and brief description of the activities performed during that time. *Id.* An additional three hours of Lost-Time Losses can be claimed with documented evidence of the lost time. *Id.* Documented lost time will be paid at $18 per hour; however, if Settlement Class Members missed work in order to address the Data Incidents, Settlement Class Members can be reimbursed at the rate of documented compensation up to $50 per hour. *Id.*

Third, California Subclass Members can make a claim for an additional cash payment of $50. *Id.* ¶ 61.

The total of California Subclass Claimed Benefits and Lost-Time Losses is capped at $4,000,000. *Id.* ¶ 62. If the total of California Subclass Claimed Benefits and Lost-Time Losses

---

[1] Importantly, among the many benefits all Settlement Class Members will receive from the Aura Financial Shield is a $1 million insurance policy for financial theft. So, even if Settlement Class Members do not make a monetary claim now, they will still be covered up to $1,000,000 for any stolen funds if they are a victim of financial fraud during the life of the policy.

exceeds $4,000,000, then the claims for Lost Time Losses and each California Claim will be reduced *pro rata* until the total is no higher than $4,000,000. *Id.* ¶ 62.

### 2. Remedial Measures Attributable to the Settlement

In addition to the monetary benefits described, as part of the settlement, Defendants have agreed to equitable relief in the form of changes to Defendants' business practices to adequately secure their systems and environments, not limited to the network and/or servers that were used to store certain data and were subject to the Data Incidents. *Id.* ¶ 63. The changes are listed in Exhibit E to the Motion for Preliminary Approval and were filed under seal.

### C. Notice and Claims Process

### 1. Notice

On October 27, 2021, the Court appointed RG/2 Claims Administration LLC ("RG/2") as the Claims Administrator. ECF No. 43. On November 26, 2021, RG/2 commenced the Notice Program. Baldwin Decl. ¶¶ 5–8. The Notice Program included providing notice to the Settlement Class via email to the email addresses in Defendants' possession. *Id.* ¶ 8. Where the Short-Form Notice was undeliverable via email or where an email address was not available, the Short-Form Notice was sent via first-class mail to the address in Defendant's possession. Prior to mailing, addresses were run through the National Change of Address database. *Id.* ¶¶ 10–11. Short Notices returned with forwarding addresses were forwarded, and those returned with no forwarding address were resent to any valid address found after performing a skip trace. *Id.*

The Claims Administrator also created a Settlement Website, which RG/2 is maintaining and updating throughout the claim period, with the Long Form Notice and Claim Form approved by the Court, as well as the Settlement Agreement, and the Third Amended Complaint. *Id.* ¶ 5. Settlement Class Members are able to submit claim forms through the Settlement Website. *Id.*

Finally, the link to the Settlement Website is posted on Defendants' own websites, https://www.kemper.com/Settlement and https://www.infinityauto.com.

Defendants agreed to pay all costs associated with providing Class Notice and Settlement Administration. Klinger Decl. ¶ 69. Such payment is in addition to and in no way affects the amount of settlement consideration available to Settlement Class Members. *Id.*

### 2.    Claims, Objections, and Requests for Exclusion

The Notice Program advised Settlement Class Members of their rights to object to or opt out of the settlement and directed Settlement Class Members to the Settlement Website for more information. The Long-Form Notice provided instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Long-Form Notice also provided instructions for Settlement Class Members to object to the settlement and/or to Settlement Class Counsel's application for attorneys' fees, costs, and expenses. Baldwin Decl. at Ex. A. The claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. *Id.* ¶ 70.

The exclusion and objection deadline is January 25, 2022. To date, no objections have been filed and RG/2 has received no requests for exclusion.[2] Baldwin Decl. ¶¶ 12–13.

### D.    Attorneys' Fees, Costs, and Service Awards

Simultaneously with this Motion, Plaintiffs will move for Attorneys' Fees, Costs, and Service Awards. Plaintiffs will request a total for both attorneys' fees and expenses of $2,500,000. Plaintiffs will also request a service award for each of the Representative Plaintiffs in the amount

---

[2] The Parties will provide the Court with an update on the number of exclusions and opt outs, if any, prior to the Final Approval Hearing.

of $1,500. Attorneys' fees, costs, expenses, and the service awards were negotiated only after all substantive terms of the settlement were agreed upon by the Parties.

## IV.     ARGUMENT

### A.     Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class for settlement purposes in its Preliminary Approval Order finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). *See* ECF No. 43; Fed. R. Civ. P. 23(a)(1)–(4), (b)(3); *Manual for Complex Litig.* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Since that time, there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiff's Preliminary Approval Motion, the Settlement Class should now be finally certified for settlement purposes.

Where (as in this case) final certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re TikTok, Inc., Consumer Priv. Litig.*, MDL No. 3948, 2021 WL 4478403, at *5 (N.D. Ill. Sept. 30, 2021) (slip copy) (internal citations omitted).

Because a court evaluating certification of a settled class action is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem*, 521 U.S. at 620. In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the

case management issues inherent in the ascertainable class determination need not be confronted. *See id.* "[A] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Courts regularly certify class actions for settlement. In fact, courts have certified similar data breach cases—on a national basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019). *See, also, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). The Court should similarly certify the Settlement Class as it meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

**B.**     <u>The National Class and California Subclass Meet the Requirements of Rule 23(a)</u>

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. The Members of the Settlement Class and California Settlement Subclass are so Numerous that Joinder of All of Them is Impracticable.

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. 2013). Here, there are approximately 6,151,872 Settlement Class Members. Joinder, therefore, is clearly impracticable, and the Settlement Class thus easily satisfies Rule 23's numerosity requirement. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (class of 40 or more is sufficient); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (same).

### 2. Questions of Law and Fact are Common to the Members of the Settlement Classes.

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class-wide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

Here, commonality is readily satisfied because the circumstances of each particular class member retain a common core of factual or legal issues with the rest of the class, regardless of whether the individual is a member of the Settlement Class or both the Settlement Class and the California Settlement Subclass. Plaintiffs' claims center on whether Defendants failed to

adequately safeguard the records of Plaintiffs and other Settlement Class Members. For example, issues common to all Class and Subclass Members include:

- Whether Defendants owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding their PII;

- Whether Defendants knew or should have known that they may not have employed reasonable measures to keep the PII of Plaintiffs and Settlement Class Members secure; and

- Whether Defendants violated the law by failing to promptly notify Plaintiffs and members of the Classes that their PII had been compromised.

These common questions, and others alleged by Plaintiffs in their operative complaint, are central to the causes of action brought here and can be addressed on a class-wide basis, because they all tie back to the same common nucleus of operative fact—the Data Incidents and Defendants' data protection measures. *See Parker v. Risk Mgmt. Alts., Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach") Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. Plaintiffs' Claims are Typical of the Claims of the Members of the Classes They Represent.

"Rule 23(a) further requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Spates v. Roadrunner Transp. Sys., Inc.*, No. 15 C 8723, 2016 WL 7426134, at *2 (N.D. Ill. 2016). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the]

claims are based on the same legal theory." *Id.* (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met." *Hinman v. M & M Rental Ctr.*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (citing, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).

Here, the typicality requirement is satisfied for the same reasons that Plaintiffs' claims meet the commonality requirement. Specifically, Plaintiffs' claims are typical of those of other Settlement Class Members because they arise from the Data Breach. They are also based on the same legal theory, *i.e.*, that Defendants had a legal duty to protect Plaintiffs' and Settlement Class Members' PII. Because there is a "sufficient nexus" between the Plaintiffs' claims and the claims of Settlement Class Members, the typicality requirement is satisfied.

### 4. The Adequacy Requirement is Satisfied.

The test for evaluating adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc. Consumer Priv. Litig.*, 2021 WL 4478403, at *7 (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 598 (7th Cir. 1993)*.* Here, the Class Representatives and Settlement Class Counsel meet the test of adequacy.

First, there is no conflict between Plaintiffs and the Settlement Class Members. Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Settlement Class. Plaintiffs were harmed in the same way as all Settlement Class Members when Defendants failed to adequately secure their PII. Plaintiffs and all Settlement Class and California Settlement

12

Subclass Members seek relief for injuries arising out of the same Data Incidents. In light of this common event and injury, the named Plaintiffs have every incentive to vigorously pursue the class claims and have prosecuted this case for the benefit of all Settlement Class Members.

Further, Settlement Class Counsel are qualified to represent the Class. They have extensive experience in data privacy and consumer class actions. *See* Klinger Decl. ¶¶ 3–11. Contemporaneously with this filing, Settlement Class Counsel have submitted declarations demonstrating their skills and experience. *See also* ECF No. 35. The results obtained by this settlement confirm counsel's adequacy.

### 5. The Predominance and Superiority Requirements of Rule 23(b)(3) Are Satisfied.

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Common Questions of Fact and Law Predominate.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Cath. Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation

marks omitted)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, 123–124 (3d ed. 2005)).

In this case, the key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class, and whether Defendants breached that duty. The common questions that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it

had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

        **b.**      **A Class Action is the Superior Method for Resolving These Claims.**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of millions of claims in one action is far superior to litigation via individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating millions of individual data breach cases arising out of the *same* Data Incidents.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Court should finally certify the Settlement Class for settlement purposes.

### C.     <u>Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel</u>

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed herein, and as fully explained in Mr. Klinger's Declaration, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. *Id*. ¶¶ 2–12, 83. The proposed Settlement Class Counsel have diligently investigated and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the settlement of this matter to the benefit of Plaintiffs and the Settlement Class. *Id.* ¶¶ 13, 19–50. Accordingly, Plaintiffs request that the Court appoint Gary M. Klinger of Mason Lietz & Klinger LLP, Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP, and Jean S. Martin of Morgan & Morgan Complex Litigation Group as Settlement Class Counsel.

### D.     <u>The Settlement Should be Finally Approved as Fair, Reasonable and Adequate</u>

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs,

delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class

could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary
> resolution of litigation through settlement. In the class action context in particular,
> there is an overriding public interest in favor of settlement. Settlement of the
> complex disputes often involved in class actions minimizes the litigation expenses
> of both parties and also reduces the strain such litigation imposes upon already
> scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (citations and

quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.

1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor

the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002)

(citing cases).

On October 27, 2021, this Court preliminarily found the settlement to be fair, adequate,

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be

approved if the settlement is "fair, reasonable, and adequate." *In re AT & T Mobility Wireless Data

Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is

a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at

*5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT & T Mobility*, 270 F.R.D. at 346 (quoting *Armstrong*,

616 F.3d at 314)). "First, the court holds a preliminary, pre-notification hearing to consider

whether the proposed settlement falls within a range that could be approved." *Id*. "If the court

preliminarily approves the settlement, the class members are notified." *Id*.

On October 27, 2021, this Court preliminarily found the settlement to be fair, adequate,

and reasonable. ECF No. 43. This Court ordered that the notice process commence and set a final

fairness hearing for March 15, 2022. *Id.*

Where, as here, the proposed settlement would bind class members, it may only be finally approved after the fairness hearing and a finding that the settlement is fair, reasonable, and adequate, based on the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As explained below, consideration of the relevant factors supports finally approving the settlement.

### 1. The Class Representatives and Settlement Class Counsel have Adequately Represented the Settlement Class.

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re Sears, Roebuck & Co. Front-loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 313 ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. *See* Klinger Decl. ¶¶ 19–50. At the outset of their investigation, Settlement Class Counsel conducted extensive research regarding the Plaintiffs' claims, Defendants, and the Data Incidents. *Id.* The culmination of that process led to an agreement by the Parties to mediate the case with respected mediator Rodney A. Max, and later to engage in a second mediation with the assistance of experienced mediator Bennett Picker *Id.* ¶¶ 42–44. Prior to the first mediation, the Parties fully briefed the relevant issues, and Defendants produced nearly 1,000 pages of documents. *Id*. ¶ 42. Even after reaching an agreement on the central terms at the second mediation, the Parties spent months fully negotiating the finer points of the Settlement Agreement. *Id.* ¶ 47. As such, and considering counsel's extensive experience in data breach litigation (*see, e.g.*, Klinger Decl. ¶¶ 2–112), the Parties were able to enter into settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims.

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15–16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. They thus have every incentive to vigorously pursue the claims of the Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the pre-suit litigation process, and involving themselves in the settlement process. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky*, 2018 WL 3108884, at *8.

19

### 2. The Settlement was Negotiated at Arm's-Length by Vigorous Advocates, and There has been no Fraud or Collusion.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011) ("the involvement of an experienced mediator is a further protection for the class, preventing potential collusion"); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (similar).[3]

Here, the settlement resulted from good faith, arm's-length settlement negotiations over many months, including a mediation session with respected mediator Rodney A. Max of Upchurch Watson White & Max, and a second mediation with a likewise respected mediator Bennett Picker of Stradley Ronan Stevens & Young. Klinger Decl. ¶¶ 42–45. Plaintiffs and Defendants put together detailed mediation submissions setting forth their views as to the strengths of their claims and defenses, respectively, and Defendants produced nearly a thousand pages of documents. *Id.* ¶ 42. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. *Id.* ¶ 44. By the end of the second full-day mediation, the Parties reached an agreement on

---

[3] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

the central terms and executed a term sheet, but still spent weeks finalizing all settlement terms and documents. *Id.* ¶¶ 45–47.

Accordingly, it is clear that the Parties negotiated their settlement at arm's-length, and absent any fraud or collusion. *See, e.g.*, *Steele*, 2011 WL 13266350, at *4 (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by an experienced mediator); *Wright*, 2016 WL 4505169, at *11 (finding no evidence of fraud or collusion where the parties participated in two prior mediations and engaged in lengthy discovery). Thus, this factor weighs in favor of preliminary approval.

### 3. The Settlement Provides Substantial Relief for the Class.

The settlement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 347.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions* § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . ." *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring

of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

Here, the settlement provides for both automatic and claims-made monetary relief, as well as equitable relief in the form of specific data security enhancements designed to better protect Settlement Class Members' PII. All Settlement Class Members will receive access to enroll in 18-months of comprehensive Aura Financial Shield services, valued at $202 per person. Klinger Decl. ¶¶ 55–56. Moreover, all members of the Settlement Class are able to submit a claim for Out-of-Pocket Losses up to $10,000 per person. *Id.* ¶ 58. Notably, while there is an individual cap of $10,000 per person on Out-of-Pocket Losses, there is no aggregate cap, meaning if every Settlement Class Member submits a valid claim for $10,000 in Out-of-Pocket Losses, the Settlement Agreement would require that every Settlement Class Member be paid. Settlement Class Members may also claim up to three (3) hours of time spent with a simple attestation, and an additional three (3) hours of time spent with documentation, all at $18 per hour (or, if they lost work dealing with the Data Incidents, their rate of pay up to $50 per hour). *Id.* ¶ 60.

Members of the California Settlement Subclass can make an additional monetary claim for $50, simply by attesting that they were residing in the State of California when Defendants notified them of the Data Incidents. *Id.* ¶ 61. The California Consumer Privacy Act ("CCPA"), which took effect on January 1, 2020, allows consumers to seek statutory damages of up to $750 per violation. Given the infancy of this statute, however, very few courts have had the opportunity to opine on

the appropriate monetary value of these claims. In *Atkinson v. Minted, Inc.*, No. 3:20-cv-03869-VC, 2021 WL 2411041 (N.D. Cal. May 14, 2021), the court granted preliminary approval of a settlement where plaintiffs alleged that in violation of the landmark CCPA, defendant failed to protect consumers' PII from exfiltration. In plaintiffs' motion for preliminary approval of the settlement, plaintiffs contended that the settlement would provide 4.1 million class members with, among other relief, an estimated cash payment of $43 per person, which the court found to be fair, reasonable, and adequate. *See Atkinson*, No. 3:20-cv-03869-VC, Pl.'s Mem. in Supp. of Mot. for Prelim. Approval, ECF No. 42 at 4. Here, members of the California Settlement Subclass, who allege similar harms to those alleged by the plaintiffs in *Atkinson*, can make a claim for $50 each, which Plaintiffs believe is fair, reasonable and adequate under the circumstances. A *pro rata* reduction of the California Claims will only occur *if* the total of Lost-Time Losses and California Claims exceeds $4,000,000. *Id*. ¶ 62.

The settlement benefits are therefore fair, adequate, and reasonable compared to the range of possible recovery.

### a. The Costs, Risks, and Delay of Trial and Appeal Favor Approval of the Settlement.

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants would assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010)

(collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Class Members can have a chance at relief.

Plaintiffs dispute the defenses Defendants are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits . . . , the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright*, 2016 WL 4505169, at *10.

> **b.     The Method of Providing Relief is Effective.**

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

This settlement proposes the gold-standard in class member relief: automatic provision of Aura Financial Shield monitoring services *and* cash payments *and* equitable relief. Access to Financial Shield was automatically provided, by code, on the Short-Form Notice sent to Settlement Class Members. Cash Awards will be distributed based upon information provided by claimants

on their respective claim forms. Class Members have the opportunity to receive some compensation with a simple attestation, and greater compensation by providing documentary evidence. *Id.* Claims will be paid within 60-days of the Effective Date, or within 30-days of the date that the claim is approved, whichever is later *Id*. Accordingly, all Settlement Class Members will receive their award within a reasonable amount of time. For these reasons, the means by which the relief will be distributed is fair, efficient, and effective.

### c. The Proposed Award of Attorneys' Fees is Fair and Reasonable.

"[T]he terms of any proposed award of attorney's fees, including timing of payment," are also factors in considering whether the relief provided to the Class in a proposed settlement is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of attorneys' fees and costs in the amount of $2,500,000—a small fraction of the value of the total settlement. In fact, the fees and costs requested are approximately 15 percent of the $17.1 million conservative valuation of the settlement. *See* Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees Award, Expense Reimbursement, and Service Awards to Representative Plaintiffs, filed concurrently herewith. This amount falls well below other approved class settlements, including privacy class settlements.

### d. There are No Additional Agreements Required to be Identified Under Rule 23(e)(3).

As no additional agreements requiring identification exist, this factor does not weigh either in favor of or against final approval.

### 4. The Settlement Agreement Treats Class Members Equitably Relative to Each Other.

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed settlement does not improperly

discriminate between any segments of the Settlement Class. All Settlement Class Members and California Settlement Subclass Members will *automatically* receive a code by which they can utilize up to 18-months of Shield Services. Similarly, all are eligible to make a claim for up to $10,000 in reimbursements for Out-of-Pocket Losses and can also claim up to six (6) hours of Lost-Time Losses. *Id.* ¶¶ 58–60. While members of the California Settlement Subclass can recover $50 (subject to pro ration), such a recovery is warranted, as California Settlement Subclass Members have additional and valuable California state claims, such as the CCPA, that they would be able to recover for, should the case move forward through trial. *Id.* ¶¶ 61–62.

Direct Notice was sent to all Settlement Class Members, and all Settlement Class Members have the opportunity to object to or exclude themselves from the settlement. And, while Plaintiffs will each be seeking a $1,500 award for their services on behalf of the Class, this award is significantly less than the amount that any given Settlement Class Member can claim in reimbursements, and thus does not create an improper motivation to settle or give rise to undue inequities across the Class.

### 5. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement

The Court should also give great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

Here, Settlement Class Counsel have substantial experience prosecuting large, complex consumer class actions. Klinger Decl. ¶¶ 2–12, 83. After informal discovery, independent factual

investigation and mediation before a well-qualified and experienced mediator, Settlement Class Counsel are confident that the settlement provides significant relief to the Settlement Class and is in their best interests. *Id.* ¶ 20. Settlement Class Counsel whole-heartedly endorse the settlement. Additionally, the reaction of the Settlement Class has been positive. To date, there are no objections, no opt-outs, and more than 500 claims have been filed. This is "strong circumstantial evidence" that the settlement is fair, reasonable, and adequate and deserves final approval. *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000); *see also Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness").

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval to the settlement and certify the Settlement Class.

Dated this 23rd day of December, 2021.

Respectfully Submitted,

By: /s/  *Gary M. Klinger*
Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
gklinger@masonllp.com

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER**

**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, California 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com

Jean S. Martin
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 559-4908
Facsimile: (813) 222-4795
jeanmartin@forthepeople.com

M. Anderson Berry
**CLAYEO C. ARNOLD, A
PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com

*Counsel for Plaintiffs and the Settlement
Class*